# VENTURA MUNICH.

### v.

# RAMÓN VALDÉS.

---

### Law, No. 504.

1. The Constitution of the United States does not make treaties superior to acts of Congress. They are of equal dignity, and, in cases of conflict, the latest in point of enactment must prevail.

2. Such conflicts are matters of diplomacy, for the general governments to settle.

3. Courts must follow the enactments of their own government if one of its laws conflicts with a prior treaty.

4. The organic act of Porto Rico and the acts amendatory thereof, defining the jurisdiction of this court, control the provisions of the treaty of peace between the United States and Spain, in cases of conflict.

5. Article 11 of the treaty, giving Spanish citizens the same rights, in certain cases, "as the citizens of the country to which the courts belong," must be understood as giving them the same rights, in those cases, as American citizens.

6. The court has no power, except, possibly, in very exceptional cases, to deny the right to a writ of error against its judgments. The good

Munich v. Valdés.

faith of the suing out of such a writ is matter for the Supreme Court to settle.

Opinion filed January 25, 1908.

———

*Mr. Willis Sweet,* for the plaintiff.

*Mr. Thomas D. Mott, Jr.,* for the defendant.

Rodey, Judge, delivered the following opinion:

This cause is before us on the petition of the defendant for the allowance of a writ of error so that the matter may be passed upon by the Supreme Court of the United States. With this petition three assignments of error are filed, but in effect they amount to but one; and that is, that the court had no jurisdiction to entertain the case at all in the first instance. Yet this question is raised for the first time now after the case has gone to trial, verdict, and judgment, and after a motion for a new trial has been denied.

Counsel for plaintiff opposes the petition, and insists that the court has no power to grant or allow the same. After an examination of the law on the subject, we are inclined to believe that, no matter how trivial we may think the application for the writ of error to be, the trial court has little or nothing to do with the granting or allowance of such a writ. See Ex parte Virginia Comrs. (Ex parte Barksdale) 112 U. S. 177, 28 L. ed. 691, 5 Sup. Ct. Rep. 421; Sullivan v. Texas, 207 U. S. 416, 52 L. ed. 274, 28 Sup. Ct. Rep. 215. It would appear as though the exercise of the right to the writ is almost entirely in the

Munich v. Valdés.

hands of the appellant. The digests are filled with cases where the Supreme Court of the United States, after the cause is docketed there on writ of error, refuses to take jurisdiction because of the facts appearing from the face of the record itself; but it nevertheless seems to be the law that it is for the Supreme Court of the United States itself to say this, and not for the trial court to impede the writ, save, perhaps, in a most extraordinary or unusual sort of a case. The only way in which we see that the court here could, in the interest of justice, perhaps, interfere with it, if the application is made in time, is to refuse to act when it is asked to fix a supersedeas bond, or to refuse to sign the citation to the appellee for his appearance in the appellate court; but this is a position in which courts would seldom care to be placed. See Red River Cattle Co. v. Needham, 47 Fed. 358.

We are firmly of the belief that the petition for the writ in this case is wholly frivolous, and without any merit whatsoever, and that it is intended purely for purposes of delay; but, if defendant is entitled to the writ as matter of right, our opinion as to his motives is ineffectual.

The suit was a claim for $3,500, for personal injuries which plaintiff suffered by being thrown from defendant's railway train, by reason of its being started before he had time to alight. The verdict was for $3,000, which the court refused to disturb after full argument on a motion for a new trial. See 3 Porto Rico Fed. Rep. 251.

The complaint alleged that the plaintiff is a Porto Rican, and the defendant a subject of the King of Spain. This latter fact was also admitted of record during the trial. This diverse citizenship of the parties, and the fact that the amount involved

Munich v. Valdés.

was more than $1,000, is what gave the court jurisdiction to entertain the cause at the start.

It is now urged that although the defendant, Valdés, is a subject of the King of Spain, still, under art. 11 of the treaty of Paris, which provides that Spaniards residing in the territories over which Spain, by the treaty, cedes or relinquishes her sovereignty, shall be subject, in matters civil as well as criminal, to the jurisdiction of the courts of the country wherein they reside, pursuant to the ordinary laws governing the same, and that they shall have the right to appear before such courts, and to pursue the same course as citizens of the country to which the courts belong, still he had the right (although not claiming it until now) to consider himself as in the position of a Porto Rican for the purposes of the suit. That, because of such fact, that is, that he should be considered as a Porto Rican for the purposes of the suit, because the plaintiff is admittedly a Porto Rican, there would then, in the sense of the law, be no diverse citizenship, and the court would be and was without jurisdiction to try the case.

First, we think it is now too late to make this point, and that it was a privilege which defendant waived by not making it before the trial, and anyway that it is rather farfetched, because we are of opinion that when the phrase "to pursue the same course as citizens of the country to which the courts belong" was used in that article of the treaty, it referred to citizens of the United States, as it was not then known but what the people of Porto Rico would shortly thereafter be collectively made full-fledged citizens of our country. Counsel for defendant admits that the position he is thus contending for attaches to no other class of foreigners save Spaniards.

Munich v. Valdés.

'When we pointed out to counsel for defendant that § 34 of the organic act (31 Stat. at L. 77, chap. 191) conferred upon this court the same jurisdiction as that of a circuit and district court of the United States, and that § 3 of the amendment to that act, passed March 2, 1901 (31 Stat. at L. 953, chap. 812), provides that the jurisdiction of this court shall also "extend to and embrace controversies where the parties, or either of them, are citizens of the United States or citizens or subjects of a foreign state or states, wherein the matter in dispute exceeds, exclusive of interest or costs, the sum or value of one thousand dollars," he answered that, even if this is so, still these acts of Congress could not contravene the treaty, which is the supreme law of the land. With this latter contention we cannot agree, because the Constitution of the United States does not make treaties of superior binding force to an act of Congress, but puts them on an exact equality in that regard, and, of course, if there is a conflict in their terms, whichever is latest in date supersedes the other to the extent of the conflict. We find that the Supreme Court of the United States has repeatedly passed upon this question in accordance with the view we are here taking of it. See The Cherokee Tobacco (207 Half Pound Papers of Smoking Tobacco v. United States) 11 Wall. 616, 20 L. ed. 227; Head Money Cases (Edye v. Robertson) 112 U. S. 580 et seq., 28 L. ed. 798, 5 Sup. Ct. Rep. 247; Whitney v. Robertson, 124 U. S. 190, 31 L. ed. 386, 8 Sup. Ct. Rep. 456; Botiller v. Dominguez, 130 U. S. 247, 32 L. ed. 926, 9 Sup. Ct. Rep. 525. No language could be plainer than that used in the case last above cited. It is: "With regard to the first of these propositions it may be said that, so far as the act of Congress is in conflict with the treaty with Mexico, that is

Munich v. Valdés.

a matter in which the court is bound to follow the statutory enactments of its own government. If the treaty was violated by this general statute, enacted for the purpose of ascertaining the validity of claims derived from the Mexican government, it was a matter of international concern, which the two states must determine by treaty, or by such other means as enables one state to enforce upon another the obligations of a treaty. This court, in a class of cases like the present, has no power to set itself up as the instrumentality for enforcing the provisions of a treaty with a foreign nation which the government of the United States, as a sovereign power, chooses to disregard."

These, with our knowledge of the facts in the case, are the reasons which impel us to speak of this application for the writ of error as we have done. However, after a considerable search in the authorities, we are unable to find or satisfy ourselves to a certainty that the court has any power to prevent the suing out of this writ, and, as our jurisdiction has been attacked, even though late, and the time for supersedeas is about to expire, we feel that we ought not to prevent its issuance. It would appear as though the bond, when given in time as a supersedeas, is considered a sufficient protection for the defendant in error, and the power of the Supreme Court of the United States to impose a penalty for a frivolous suing out of the writ is evidently considered a sufficient deterrent in such cases. The Supreme Court of the United States held in the case of The Douro, 3 Wall. 566, 18 L. ed. 169, that "an appeal is a matter of right; and, if prayed, must be allowed; but should never be prayed without some expectation of reversal. We impose penalties when writs of error merely for delay are sued out, in cases of judgments at law for damages; and, if the rule were applicable to the case before us, we should apply it."

In Prentice v. Pickersgill, 6 Wall. 513, 18 L. ed. 791, the court used this language: "The writ of error in this case was sued out merely for delay. The judgment will therefore be affirmed under the twenty-third rule, with 10 per centum damages on the amount of the judgment below." See also Re Claasen, 140 U. S. 200, 35 L. ed. 409, 11 Sup. Ct. Rep. 735, and American R. Co. v. Castro, 204 U. S. 453, 51 L. ed. 564, 27 Sup. Ct. Rep. 466, and cases cited.

When the application was made for the allowance of this writ, it was considered of such importance to the entire bar as that, by permission of the court, several of the members were heard against the application; yet, since then, cause No. 74 on the law docket of this court, entitled J. Ochoa y Hermano v. New York & P. R. S. S. Co., has been called to our attention, and we find from its files that a former judge of this court refused to allow a writ of error to be sued out because the judgment was for only $800, when the law prevented appeals in cases involving less than $5,000; yet we find that Messrs. N. B. K. Pettingill and J. M. Keedy, attorneys for the defendant in that case in this court, after the denial of the Judge here to permit the suing out of a writ of error, presented a petition to the Chief Justice of the United States at Washington, on January 2, 1903, alleging this refusal, and the Chief Justice of the United States indorsed on the petition thus presented, which is now found in the files of the case here, his allowance of the same, and the case went up in response to that mandate. The cause was afterwards dismissed without a trial on the merits on motion of plaintiff in error. See 194 U. S. 639, 640, 48 L. ed. 1162, 24 Sup. Ct. Rep. 857. This action of the Chief Justice, in thus granting the writ in that kind of a case, even though it was before the decision

in J. Ribas y Hijo v. United States, 194 U. S. 315, 48 L. ed. 994, 24 Sup. Ct. Rep. 727, where the limit of $5,000 to justify appeals from this court was first authoritatively settled, admonishes us that we probably have no power to prevent the suing out of this writ of error as here presented, and the same, if our action is at all necessary, is therefore allowed; a bond to act as a supersedeas is fixed at the sum of $5,000, to be approved by the court, and citation will issue to the appellee, as required by law, and it is so ordered.