## THE MOHAWK.

1. The act of December 23, 1852, authorizing foreign vessels wrecked and repaired in the United States, to be registered or enrolled, is to be taken as a part of our system of registration and enrolment.

2. Vessels engaged in the foreign trade are *registered*, and those engaged in the coasting and home trade are *enrolled;* and the words "register" and "enrolment" are used to distinguish the certificates granted to those two classes of vessels.

3. The two statutes providing generally for registry and enrolment of vessels, are the act of December 31, 1792, applicable exclusively to registry of vessels engaged in foreign commerce, and the act of July 18, 1793, applicable exclusively to vessels engaged in domestic commerce.

4. The penalty of forfeiture of a vessel for the use of a certificate of registry to which she is not entitled, found in the 27th section of the act of 1792, is not imported into the act of 1793; and there is no forfeiture under that act for the use of a fraudulent enrolment.

5. But the act of March 2d, 1831, concerning vessels used on our northern frontiers, which are necessarily engaged in both the foreign and home traffic at the same time, makes the certificate of enrolment equivalent to both registry and enrolment.

6. This act does, by the *proviso* to its 3d section, apply the penalty of forfeiture contained in the 27th section of the act of 1792 to an enrolment having the effect of a register fraudulently obtained.

AN act of Congress of 1792* (section 27th), provides that "if any certificate of registry *or record* shall be fraudulently or knowingly used for any ship or vessel not then actually entitled to the benefit thereof, according to the true intent of this act, such ship or vessel shall be forfeited to the United States."

An act of 1793† concerning the enrolment of vessels engaged in domestic commerce, enacts (section 2d) that "in order for the enrolment of any vessel, she shall possess the same qualifications, and the same requisites, in all respects, shall be complied with, as are necessary for registering ships by the registry law; and the same duties are imposed on all officers with the same authority in relation to énrolments, and the same proceedings shall be had touching enrolments."

An act of December 23, 1852,‡ authorizes the Secretary of the Treasury to issue a register or enrolment for any vessel built in a foreign country, whenever such vessel may have been, or shall hereafter be wrecked in the United States, and shall have been, or may hereafter be purchased and repaired by a citizen or citizens thereof; *provided*, that it shall be proved to the satisfaction of the Secretary of the Treasury, that the repairs put upon such vessel shall be equal to three-fourths of the cost of said vessel, when so repaired.

Intermediate in date between the act last mentioned and the one of 1793 just before it set forth, there is another act. This act, dated March 2, 1831,§ provides by its third section that any vessel of the United States navigating the waters of our northern, northeastern, and northwestern frontiers, otherwise than by sea, shall be enrolled and licensed in such form as may be prescribed by the Secretary of the Treasury, "which enrolment and license shall authorize any such vessel to be employed either in the coasting or foreign trade; and no certificate of registry shall be required for any vessel

* December 31, 1792; 1 Stat. at Large, 287.
† February 18, 1793; Id. 305.　　　　　　　　‡ 10 Id. 149.
§ 4 Id. 487.

so employed on said frontiers; *provided, that such vessel shall be in every other respect liable to the rules, regulations, and penalties now in force relating to registered vessels on our northern, northeastern, and northwestern frontiers.*"

With these four different statutes in force, Sloan and others, wishing to give to a Canadian-built and owned vessel, the advantages of one with American papers, scuttled her and pretended that she had been accidentally made a wreck. They then raised her and put her in order; and falsely swearing, for the purpose of changing her to an American vessel, that the repairs were " equal to three-fourths of her cost when so repaired," procured American papers for her from the Secretary of the Treasury under the act of December 23, 1852.

The United States now libelled her in the District Court of Michigan, with the idea—

1. That under the three acts, first above mentioned, to wit, the acts of 1792, 1793, and 1852 alone, she was liable to forfeiture.

2. That if this was not so, she was certainly liable under these acts in connection with the act of March 2, 1831.

The District Court thought that the acts were not so essentially parts of one system as that the earlier ones could be imported into the latter, and dismissed the libel; and of this view was the Circuit Court. On appeal by the United States, the matter was now here for review.

*Mr. W. A. Moore, in favor of the decrees below:* The idea of the United States in libelling this vessel has been, that the act of 1852 is to be read as if it was a part of the original act of 1792; and that by this process the vessel will become subject to the 27th section of the latter act. The government assumes the acts to be acts in *pari materiâ;* and accordingly concludes that they are to be read as one act. But this is a misapplication of a sound maxim. The rule of *pari materiâ* is one of construction simply. Acts on the same subject are to be read together, that you may get such light as all the parts throw on each part, and thereby more accu-

rately interpret any doubtful provisions. The language of Lord Mansfield is: "They shall be taken and construed together as one system, and explanatory of each other."* For no other purpose are different acts to be taken as one law. There is no case which authorizes a court to import independent and distinct provisions from one act into another; to tack the independent provisions of one act to another. There could not be; for, under the rule of *pari materiâ*, laws which have expired, or which have been repealed, may be considered. Now, it would be absurd to say that the repealed or expired acts were to be taken as a part of the law itself. Yet such would be the logical effect, if we accepted the meaning which government gives the rule.

An act may, indeed, be amended; and this by substitution, addition, diminution, or other qualification. The legal effect is, of course, to substitute the amended form for the original form, and to render it subject to the same relation to all other parts of the act. In this case, the amendments become a part of the amended law, in the most literal sense. It becomes such by incorporation. But this is not the sense which the rule *pari materiâ* contemplates, when it says that different acts are to be taken together as one law.

The government has probably proceeded, we suppose, on a misapplication of the rule which the cases lay down for construing revenue statutes. The court, under the rule referred to, reads the whole revenue code together, in order to interpret its different parts; to see how far a subsequent act has repealed or modified a former act; to see what provisions of the former acts, relating to the same particulars, are still in force, &c., &c. Thus, in *Stuart* v. *Maxwell*,† the question was, whether the Tariff Act of 1846 repealed certain provisions of the Tariff Act of 1842; and in order to reach a sound interpretation, the court read both acts together. So in *Ring* v. *Maxwell*,‡ the question was, whether a provision of the Tariff Act of 1842 had been repealed by a subsequent act. These were both correct applications of

---

* Rex *v.* Loxdale, 1 Burrow, 447.        † 16 Howard. 158
‡ 17 Id. 14⁷

the rule. The critical observations of Curtis, J., in the last case,* confirms both of our positions.

Applying this rule to the case, we are unable to see that the decree should be reversed. We think it plain that the penalty of forfeiture found in the 27th section of the act of 1792 is not imported into the act of 1793; and that it would be straining to hold even that the *proviso* to the 3d section of the act of March 2, 1831, applied the penalty contained in the section above named of the act of 1792, to any enrolment.

*Mr. Speed, A. G., and Mr. Assistant Attorney-General Ashton,* contra.

Mr. Justice MILLER delivered the opinion of the court.

The act of December 23, 1852, authorized the Secretary of the Treasury to issue a register or enrolment for any vessel built in a foreign country, whenever such vessel may have been, or shall hereafter be, wrecked in the United States, and shall have been, or may hereafter be purchased and repaired by a citizen or citizens thereof: *provided*, that it shall be proved to the satisfaction of the Secretary of the Treasury, that the repairs put upon such vessel shall be equal to three-fourths of the cost of said vessel, when so repaired.

In this act, under which the owners of the Mohawk procured the enrolment, and the whole of which we have just quoted, there is nothing which inflicts such forfeiture, or any other penalty for fraud or false swearing, in procuring the action of the secretary.

This act is, however, to be construed as a part of our system of registry and enrolment of vessels, and as merely adding another class which may be registered and enrolled to those enumerated in the previous statutes. Whatever, therefore, may be found in those statutes imposing a penalty for fraud in procuring the enrolment of a vessel, may well be held to apply to an *enrolment* under the act of 1852.

We emphasize the word *enrolment*, because the registry

---

* Pages 150–1.

of a vessel and the enrolment of a vessel are essentially different things, are provided for by different statutes, and are applicable to vessels engaged in different and distinct pursuits. Hence the act of 1852 says that the secretary may issue to a vessel, such as it describes, "a register or enrolment."

The purpose of a register is to declare the nationality of a vessel engaged in trade with foreign nations, and to enable her to assert that nationality wherever found. The purpose of an enrolment is to evidence the national character of a vessel engaged in the coasting trade or home traffic, and to enable such vessel to procure a coasting license.*

The distinction between these two classes of vessels is kept up throughout the legislation of Congress on the subject, and the word register is invariably used in reference to the one class, and enrolment in reference to the other.

There are two statutes in force making general provisions for the subjects of registry and enrolment of vessels. One of them is the act of December 31, 1792, which applies exclusively to vessels engaged in foreign commerce and to their registry, and the other is the act of February 18, 1793, which relates to vessels engaged in the coasting trade and fisheries, and to their enrolment.

The act of 1792 provides, that "if any certificate of registry or record shall be fraudulently or knowingly used for any ship or vessel not then actually entitled to the benefit thereof, according to the true intent of this act, such ship or vessel shall be forfeited to the United States." This section does not refer to an enrolment, because neither the word registry or record is usually applied to an enrolment, and because the true intent of the act can have reference to no other class of vessels than those engaged in foreign commerce, which are required to take out a register.

The act of 1793, concerning the enrolment of vessels engaged in domestic commerce, enacts, by the second section, that "in order for the enrolment of any vessel, she shall

---

* Gibbons v. Ogden, 9 Wheaton, 214.

possess the same qualifications, and the same requisites, in all respects, shall be complied with, as are necessary for registering ships by the registry law; and the same duties are imposed on all officers with the same authority in relation to enrolments, and the same proceedings shall be had touching enrolments." From this it is argued, that forfeiture shall take place under like circumstances as is provided for in the registry law. But there is not only nothing in the terms used which refers to penalties, but there is nothing which can be held to have such reference by any fair implication. These provisions concern the class or qualifications of vessels which may be enrolled, the requisites to be complied with before enrolment, the duties and authority of officers connected with the enrolment, and the proceedings to be had in obtaining enrolment. In all these particulars the rules of the registry law are adopted. The act makes sufficient provision for false affidavits, and has its penalties for them, but forfeiture of the vessel is not one of them.

But the act of March 2, 1831, undertakes, as its title imports, to regulate both the foreign and coasting trade, on the *northern, northeastern,* and *northwestern* frontiers of the United States.

In these regions the domestic and the foreign trade are so blended that the same vessel is almost necessarily engaged in both at the same time, and often during the same voyage. To meet this kind of trade the third section of that act says, in reference to vessels engaged in navigating those waters, that "they shall be enrolled and licensed in such form as may be prescribed by the Secretary of the Treasury; which enrolment and license shall authorize any such boat, sloop, or other vessel, to be employed either in the coasting or foreign trade, and no certificate of registry shall be required for vessels employed on said frontiers; *provided,* that such boat, sloop or other vessel, shall be in every other respect liable to the rules, regulations, and penalties now in force relating to registered vessels, on our northern, northeastern, and northwestern frontiers."

It is the obvious policy of this act to enable a class of vessels which are engaged in both the foreign and the coasting trade at the same time, to do so without the necessity of taking out both a register and an enrolment.  For this purpose the act makes the enrolment equivalent to both register and enrolment.  In giving to the enrolment the effect of a register, it very properly subjects the vessel to all the rules, regulations, and penalties relating to registered vessels.  One of these penalties, as we have already seen, is the forfeiture of the vessel, for the fraudulent use of a certificate of registry, when she is not actually entitled to the benefit thereof.

The statements of the libel and the evidence in the case which supports them bring the Mohawk within this penalty.

DECREE REVERSED, and the case remanded, with instructions to enter a decree of forfeiture and condemnation of the vessel.