## UNITED STATES v. PICOU.

### No. 7023.

Circuit Court of Appeals, Fifth Circuit.

June 26, 1934.

Alex C. Birch, U. S. Atty., and J. E. Meredith, Asst. U. S. Atty., both of Mobile, Ala., for the United States.

Palmer Pillans and Robt. T. Ervin, Jr., both of Mobile, Ala., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

The United States filed a libel of information, in two counts, for the condemnation and forfeiture of the motorboat Sterling. The libel is inartificially drawn but sufficiently alleges the following facts: The Sterling was granted a license by the United States for the coasting trade, on May 31, 1932. Under the command of her owner, Wilce Picou, she pro-

ceeded from an unknown point in the United States and on November 18, 1932, was discovered by the Coast Guard at a point on the high seas about 19 miles off the Louisiana coast, alongside of a foreign vessel, the Leon Juin, and was seized. It was the intent and purpose of the Sterling to transfer intoxicating liquor from the other vessel and illegally import it into the United States. The first count charges violation of Rev. St. § 4377 (46 USCA § 325) by engaging in a trade other than that for which she was licensed and the second count charges violation of Rev. St. § 4337 (46 USCA § 278) by engaging in a foreign voyage without surrendering her license and without being registered. The libel was dismissed on exceptions. This appeal followed.

Revised Statutes § 4377 (46 USCA § 325), so far as necessary to quote, provides:

"Whenever any licensed vessel * * * is employed in any other trade than that for which she is licensed, * * * such vessel with her tackle, apparel, and furniture, and the cargo, found on board her, shall be forfeited."

We may put aside as unimportant the charge that the Sterling had engaged in a foreign voyage without surrendering her license. As applied to the facts alleged, on this point the authorities are in conflict. It would serve no good purpose to discuss them since if she was engaged in a trade other than that for which she was licensed, she would be subject to forfeiture.

■ Transporting intoxicating liquor from a vessel on the high seas, to be illegally imported into the United States, would constitute a violation of a coastwise license. The Rosalie M. (D. C.) 4 F.(2d) 815, affirmed (C. C. A.) 12 F.(2d) 970; U. S. v. The Ruth Mildred, 286 U. S. 67, 52 S. Ct. 473, 76 L. Ed. 981. However, it is argued that the libel does not charge that the Sterling had engaged in a trade other than that for which she was licensed but merely alleges an intent to do so. If this were true, the point would be well taken but the libel does not charge merely intent. It charges the overt act of engaging in a voyage, with an unlawful intent.

■ As used in the navigation acts, the term "trade" is synonymous with "business." The trade or business of a vessel licensed for the coastwise trade is the transportation of freight and passengers for hire between ports of the United States. In order to ply her trade, she must engage in a voyage. Whether the intent at its inception fixes the character of an uncompleted voyage is the question presented for decision. Much light is shed upon it by the following authorities.

■ Rev. St. § 4377 (46 USCA § 325) is derived from the Act of February 18, 1793 (1 Stat. 316). In the case of The Active, 7 Cranch 100, 3 L. Ed. 282, it appears that The Active was licensed for the fishing trade. She left her dock and was seized before she had gotten out of the harbor. It was held that sailing laden with goods, with the intent to carry them to another place, without a license therefor, was a violation of the act of 1793, and she was subject to forfeiture. In the case of The Eliza, Fed. Cas. No. 4,346, it was held by Mr. Justice Story, on circuit, construing the same act, that a fishing vessel by taking on board merchandise to be delivered to a vessel on the high seas for hire was employed in a trade other than that for which licensed and subject to condemnation and forfeiture, although the merchandise had not been delivered. In the case of U. S. v. Morris, 14 Pet. 464, 10 L. Ed. 543, it was held that a vessel fitted out for the bringing of slaves from Africa, and sailing for Africa with that intention, was engaged in the slave trade though she had never reached the coast of Africa and no slaves had ever been taken on board. In the case of The Daniel Ball, 10 Wall. 557, 19 L. Ed. 999, it appears that the Daniel Ball was employed in transporting freight on Grand river, wholly within the state of Michigan. She had no connection with other carriers, but the goods were destined to be transported out of the state of Michigan. It was held that the vessel was engaged in interstate commerce and subject to the navigation laws of the United States. It is well settled that where freight is delivered to a carrier, to be transported to a destination out of the state, it is moving in interstate commerce from the time it is actually delivered to the carrier although it remains temporarily in the state where it originates. It is the intention as to the ultimate destination of the goods that fixes the character of the transportation, whether intrastate, interstate, or foreign. Coe v. Errol, 116 U. S. 517, 6 S. Ct. 475, 29 L. Ed. 715; Sou. Pac. Term. Co. v. Int. Comm., 219 U. S. 498, 31 S. Ct. 279, 55 L. Ed. 310. In the case of U. S. v. Freeman, 239 U. S. 117, 36 S. Ct. 32, 60 L. Ed. 172, it was held that if intoxicating liquor is shipped from one state, destined to another state, without the contents of the package being plainly marked thereon, the offense denounced by section 240, Criminal Code (18 USCA § 390), is committed by mak-

ing the shipment, before the goods are delivered at destination.

From the above authorities, and indeed from a common sense viewpoint, the conclusion is inescapable that the intention at the inception of a voyage determines its character. It is not necessary that the voyage should be completed before an offense denounced by statute is committed. If the Sterling had remained at her dock, the intention to engage in an unlawful enterprise would not have subjected her to forfeiture. If she departed in ballast from the United States destined for a foreign port, she would be engaging in foreign and not coastwise trade from the moment she broke ground. If it was her intention to make contact with a vessel on the high seas, for the purpose of transshipping and illegally importing intoxicating liquor into the United States from the moment of her departure from port, she would be engaging in a trade other than that for which she was licensed. It follows that the allegations of the libel are sufficient to show that the Sterling was subject to condemnation and forfeiture.

Reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.