**AMERICAN MARITIME ASSOCIATION, Appellant,**

v.

**Maurice H. STANS, Individually, and as Secretary of Commerce, et al., Appellees.**

**No. 71–1799.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 3, 1972.

Decided June 11, 1973.

Joseph A. Klausner, Washington, D. C., with whom John M. Drewry, Wash-ington, D. C., was on the brief for appellant.

Leavenworth Colby, Atty., Dept. of Justice with whom L. Patrick Gray, III, Asst. Atty. Gen., at the time the brief was filed, and Alan S. Rosenthal, Atty., Dept. of Justice, were on the brief, for appellee Stans.

Edward Schmeltzer, Washington, D. C., with whom Robert A. Peavy, Washington, D. C., was on the brief for appellee, United States Lines, Inc.

Robert T. Basseches, Washington, D. C., with whom Warner W. Gardner and Mark L. Evans, Washington, D. C., were on the brief, for appellee, Liner Council, American Institute for Merchant Shipping.

Before BAZELON, Chief Judge, MacKINNON, Circuit Judge, and WYZANSKI,* Senior United States District Judge for the District of Massachusetts.

WYZANSKI, Senior District Judge:

This is an appeal from the July 12, 1971 order of the District Court dismissing plaintiff's complaint. See American Maritime Assoc. v. Stans, et al., 329 F.Supp. 1179 (D.D.C.1971).

Plaintiff, American Maritime Association, an association of shipping carriers under the American flag, filed a complaint which, as amended, sought review by the District Court of the Maritime Administration's final action, a rule made October 13, 1970, sustaining "Legality of certain charters to MSC of vessels built with construction-differential subsidy", supplemental docket S.244.

Named as defendants were Gibson, Blackwell, and Bowman, officials of the Maritime Administration and of the Maritime Subsidy Board, and Stans, the Secretary of Commerce, who delegated to those three defendants the performance of duties assigned to him by the Merchant Marine Act of 1936, 46 U.S.C. § 1101 et seq., and Reorganization Plan No. 7 of 1961, 75 Stat. 840, and Reorganization Plan No. 21 of 1950, 64 Stat.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1273. Subsequently, the court permitted to intervene, as defendant, American Institute of Merchant Shipping, an association of 12 steamship companies receiving subsidies under the Merchant Marine Act as it read before the October 21, 1970 amendments, 84 Stat. 1018, 46 U.S.C. § 1101 et seq. (Supp.1971). The court also permitted to intervene, as defendant, United States Lines, which had chartered, to Military Sea Transportation Service, certain vessels built with "construction differential subsidies" provided by Title V of the Merchant Marine Act of 1936, 46 U.S.C. § 1151 et seq.

In effect, the amended complaint alleged that the officers named as defendants, in ruling that intervenor defendant United States Lines "will not be precluded from performing for MSTS [i. e., Military Sea Transportation Service] for the charter period (including operational periods offered) by reason of MARAD [i. e., Marine Administration] prohibition," had violated the Merchant Marine Act.

The claimed violation arose in this context. The Merchant Marine Act of 1936, 46 U.S.C. § 1151 et seq. (Supp. 1971), as it read at the relevant dates, (all of which preceded the amendments made October 21, 1970, 84 Stat. 1018) provided in Title V for "Construction Subsidies" (sometimes called "Construction Differential Subsidies") and in Title VI for "Operating Subsidies." Plaintiff, on July 1, 1969, petitioned defendant Secretary Stans to initiate a rule-making proceeding regarding subsidies to ships which carry cargo reserved by law for American flag vessels. November 14, 1969, plaintiff followed with a memorandum asserting that no statutory authority existed for long-time charters to Military Sea Transportation Service of ships built with "construction subsidies."

Inasmuch as no facts were disputed, the Maritime Subsidy Board, (to which the Secretary of Commerce had delegated the duty to make a rule, the effect of which would determine plaintiff's petition) decided the matter, after receiving briefs. On October 13, 1970 the Board made its rule, here under review. It rejected plaintiff's contentions. It upheld the legality of the charters to Military Sealift Command (the new name of Military Sea Transportation Service) of vessels built with "construction subsidies."

The District Court had jurisdiction to review that October 13, 1970 rule. Administrative Procedure Act, Section 10, 5 U.S.C. § 703. Pacific Far East Line, Inc. v. Federal Maritime Board, 107 U.S.App.D.C. 155, 275 F.2d 184. And its exercise of jurisdiction to sustain the rule resulted in the July 21, 1973 order here on appeal.

Before coming to the merits, we note that deliberately we have skimmed from the case as it now comes to us all references in the District Court's opinion which recite matters relating to events leading up to and including defendant Gibson's June 12, 1970 letter. See American Maritime Association v. Stans, et al., 329 F.Supp. 1179, 1181–1183. As Judge Bryant himself recognized, those were irrelevant to the merits to which he properly addressed himself, pp. 1183–1187, and to which we also propose now to address ourselves.

Despite the statutory complexity which swathes Congressional grants of subsidies, especially in maritime legislation, this is a very simple case. There are just two points to be made: first, it is not the law that the only way that the armed services may procure commercial vessels for military use is by Section 902(a) of the Merchant Marine Act of 1936; and second, it is not the law that when the Secretary of Commerce or the Maritime Administration charters to the Military Sealift Command a vessel built with "construction subsidies," the vessel is not, as the subsidy legislation requires, being operated "exclusively in foreign trade."

We turn to the first point. By Section 902(a) of the Merchant Marine Act of 1936, 46 U.S.C. § 1242(a), Congress gave the Secretary of Commerce, whenever the President had declared a na-

tional emergency, (which it is undeniable was the situation here) the authority to requisition American vessels. Congress included suitable provisions for compensation and deductions. The opinion of Judge Bryant sets forth the statutory text and references, the legislative history, and the policy considerations. We have nothing to add.

■ It is plain to us, as it was to the Maritime Administration's Board and to Judge Bryant, that Section 902(a) provides merely one way, not the exclusive means, by which the armed services may lawfully obtain charter use of commercial vessels. The words of the text so indicate. Moreover, there is a wealth of supporting administrative practice, fully reported to Congress, and reviewed often by it and also by the Comptroller General. We see no need again to picture, nor to seek to augment, the treasure accumulated by Judge Bryant.

■ The second point involves primarily an interpretation of Section 506 of the Merchant Marine Act of 1936, 46 U.S.C. § 1156. The statute requires that "every owner of a vessel for which a construction-differential subsidy has been paid shall agree that the vessel shall be operated exclusively in foreign trade, or on a round-the-world voyage. . . ."

The text itself shows that "foreign trade" is used in conjunction with "round-the-world voyage." The latter obviously is a purely geographical, not a commercial, description. The canon *noscitur a sociis* suggests that "foreign trade" is also used geographically.

The same interpretation is permitted by the definition set forth in Section 905(a) of the Act, 46 U.S.C. § 1244(a). There it is provided that:

"The words 'foreign commerce' or 'foreign trade' mean commerce or trade between the United States, its Territories or possessions, or the District of Columbia, and a foreign country."

To one familiar with legislation, this definition means nothing more than an indication of Congressional intent to reach the ultimate Constitutional boundaries of the "commerce" power under Article I, Section 8, Clause 3. It is not a way of distinguishing between what laymen would denominate commercial (i. e., business) and non-commercial (i. e., non-business) transactions.

Furthermore, the legislative and administrative history referred to by Judge Bryant persuasively supports our conclusion that Congress intended to permit, and the Act does permit, the rule adopted by the Maritime Administration, and the practice of chartering vessels in the manner which led plaintiff to complain.

Judgment of the District Court affirmed.