**GREAT LAKES DREDGE & DOCK COMPANY and Southern Shipbuilding Corporation, Plaintiffs,**

v.

**Colonel Daniel D. LUDWIG, District Engineer, Buffalo District, United States Corps of Engineers; Roger J. Au & Son, Inc.; Robert E. Chasen, Commissioner of Customs of the United States of America, Defendants.**

No. Civ-78-185.

United States District Court,
W. D. New York.

March 26, 1980.

Norton & Christensen, Goshen, N.Y., (Stanley J. Norton, Goshen, N.Y., of counsel), for plaintiffs.

Richard J. Arcara, U. S. Atty., Buffalo, N.Y., (Carol C. White, Asst. U. S. Atty., and Thomas R. Abretske, Dist. Counsel, Dept. of the Army Corps of Engineers, Buffalo, N.Y., of counsel), for defendant Ludwig.

Haight, Gardner, Poor & Havens, New York City, (Thomas F. Molanphy, and Richard K. Matanle, II, New York City, of counsel), for defendant Au.

Richard J. Arcara, U. S. Atty., Buffalo, N.Y., (Carol C. White, Asst. U. S. Atty., Buffalo, N.Y., and Arthur Rettinger, Chief Counsel, U. S. Customs Service, Washington, D.C., of counsel), for defendant Chasen.

CURTIN, Chief Judge.

"The lowest and most dejected thing of fortune, stands still in Esperance, . . ."[1]

This case involves a challenge to a federal contract award for dredging channels in the Cuyahoga and Old Rivers in Cleveland, Ohio by use of the dredge, the Esperance III. A preliminary injunction which would have prevented defendants from performing the contract was denied by this court on May 10, 1978. The contract work has since been performed. The case is now before the court on cross motions for declaratory judgment, as well as other relief.

The United States Corps of Engineers, Buffalo District [hereinafter "Corps"], maintains navigation channels by dredging at numerous locations in the Great Lakes area, including channels in the Cuyahoga

---

1. King Lear, IV, i, 4.

and Old Rivers. The Corps normally advertises and awards federal contracts for the dredging.

Bidding on the dredging contract at issue in this case opened on February 28, 1978. The only two dredging companies which submitted bids were the plaintiff Great Lakes Dredge & Dock Company [hereinafter "Great Lakes"] and defendant Roger J. Au & Son, Inc. [hereinafter "Au"]. Great Lakes' bid contained a cost estimate of $1,915,000, and Au's contained a cost estimate of $1,565,000. These compared with the government cost estimate on the project of $2,038,500. Over Great Lakes' protest, the contract was awarded to Au, and notice to proceed was issued.

As part of its bid, defendant Au stated that the dredging work would be performed by the Esperance III, a self-propelled, self-loading hopper dredge. Built in the United States in 1944 as a World War II landing ship tank ["LST"], the Esperance III was later sold foreign, converted to a hopper dredge in a European shipyard, and placed under Panamanian registry. In 1977, the vessel was purchased by CDECO Maritime Construction, Inc. [hereinafter "CDECO"], a Delaware corporation, to be used for dredging by the defendant Au.

46 U.S.C. § 292 prohibits foreign-built dredges from engaging in dredging in the United States "unless documented as a vessel of the United States." In accordance with this requirement, prior to the purchase of the vessel by CDECO, Au applied to the United States Coast Guard for a certification of registry for the Esperance III. The Coast Guard's Merchant Vessel Documentation Center advised Au to remove certain equipment installed abroad and reconvert the vessel into a dredge in the United States. Au complied and, on April 7, 1978, a certificate of registry was issued documenting the Esperance III as a United States vessel. The certificate contained a restrictive endorsement prohibiting the use of the Esperance III in coastwide trade. The restriction presumably was imposed because the Esperance III lost its status as an American-built vessel when it was sold and registered abroad, and was therefore within the prohibition of 46 U.S.C. § 883, which provides in part as follows:

No merchandise shall be transported by water, or by land and water, on penalty of forfeiture thereof, between points in the United States, . . . in any other vessel than a vessel built in and documented under the laws of the United States . . . : *Provided*, That no vessel having at any time acquired the lawful right to engage in the coastwise trade, . . . and later sold foreign . . . shall hereafter acquire the right to engage in the coastwise trade.

The defendant United States Customs Service [hereinafter "Customs"], charged with enforcing the restriction placed on the vessel, issued a decision-letter that the Esperance III was not prohibited by § 883 from engaging in the dredging involved in the contract bid. The ruling was based on a finding that polluted spoil material, which is transported for the sole purpose of disposing of it, is not "merchandise" within the meaning of § 883, and its transportation is not coastwise trade. At the time Au confirmed its bid, it informed the Corps of the ruling.

The conclusions reached in the decision letter were based in part on an engineering study by Erickson Engineering Associates. They concluded that the polluted spoil was a liability to the government because it had been difficult, and therefore expensive, to finding dumping sites for this undesirable material. The material removed from the rivers included runoff from agricultural lands, and industrial and municipal sewage plant discharges. Since it was highly polluted, the material had to be disposed of in a spoil disposal facility in accordance with 33 U.S.C. § 1293a. The disposal area used in the performance of the contract at issue is located at the Cleveland Harbor and title is held by the Cleveland-Cuyahoga County Port Authority. The contract called for this valueless material to be removed from the navigation channels and then transported to this facility for the sole purpose of disposing of it.

In the summer of 1978, the plaintiff Great Lakes sought an injunction from this court to prevent Au from performing the contract. Plaintiff contended that the dredging involved under the contract constituted coastwise trade, and that only vessels which are enrolled and licensed to engage in the coastwise trade could perform the work under contract. Since the Esperance III's registration prohibits it from engaging in "coastwise trade," Great Lakes argued that Au's bid was not responsive and the contract should not have been awarded to Au. Great Lakes also argued that the transported spoils was "merchandise," within the meaning of the statute.

In my decision and order of May 10, 1978, I refused to grant the injunction. I ruled that Great Lakes had standing to pursue the matter, as there had been injury in fact, but that the motion for a preliminary injunction had to be denied because plaintiffs failed to show either irreparable harm or probability of success on the merits. *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973). No appeal was taken. As noted earlier, the dredging has been completed.

The matter now before the court, on plaintiffs' motion for final judgment and defendants' cross-motion for summary judgment, is an action for declaratory judgment as well as other relief. After oral argument the parties supplied the court with certain requested supplemental papers, which I have considered.

■ The threshold question concerns defendant Au's claim that Great Lakes lacks standing. This issue was discussed in my earlier decision, and taking all factors into account, I am drawn to the same conclusion. "Great Lakes' status as a disappointed bidder on a federal contract is sufficient to constitute injury in fact." *See, e. g., William F. Wilke, Inc. v. Dept. of the Army*, 485 F.2d 180 (4th Cir. 1973); *Ballerina Pen Co. v. Kunziq*, 433 F.2d 1204 (D.C.Cir.1970); *American Maritime Assoc. v. Blumenthal*, 458 F.Supp. 849, 854–56 (D.D.C.1977), *aff'd on other grounds*, 590 F.2d 1156 (D.C.Cir. 1979), *cert. denied*, 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979).

The standing of plaintiff Southern Shipbuilding Corporation [hereinafter "Southern"], a builder of self-propelled, self-loading hopper dredges, was not reached in my earlier opinion because Southern did not join in Great Lakes' motion for a preliminary injunction. It must, however, be reached here as Southern has joined in the motion for declaratory judgment and claims that it will suffer economic loss from Au's ability to use the Esperance III in similar dredging contracts.

■ The two-part test for standing was set out in *Data Processing Service v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970): Standing exists when (1) the interest sought to be protected by the plaintiffs is "arguably within the zone of interests to be protected" by the statute, and (2) there is "injury in fact." *Id.* at 153, 90 S.Ct. at 830. In *Pennsylvania Railroad Co. v. Dillon*, 335 F.2d 292, 295 (D.C.Cir.1964), *cert. denied*, 379 U.S. 945, 85 S.Ct. 437, 13 L.Ed.2d 543 (1964), the District of Columbia Court of Appeals, per Burger, C. J., found that the purpose of 46 U.S.C. § 883 was:

> to stimulate and encourage resort to domestic shipyards and thus ensure them sufficient business so that their facilities would be adequate in time of national emergency.

Plaintiff Southern's injury is within the zone of interests protected by 46 U.S.C. § 883, as construed, and plaintiff will suffer injury in fact from loss of business. Plaintiff Southern reasonably claims that, as a result of Customs' ruling, it will suffer the loss of present and future revenues, caused by the availability of renaturalized vessels for domestic dredging operations.

■ No party argues that the matter is moot because the work under the contract originally at issue here has been performed. As the Esperance III is still available for contract and dredging work in the Great Lakes area will continue, the problem is capable of repetition, yet likely to evade review. *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1972); *Wein-*

*stein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975).

The issue of exhaustion of administrative remedies also arises because of the importance of Customs' decision-letter. The parties agreed to supply the court with supplemental memoranda of law on this point. I have reviewed the material submitted and the relevant regulations. There does not appear to be any administrative remedy available to the plaintiffs. Consequently, administrative redress has been exhausted.

We now come to the substance of this lawsuit.

Defendant Customs, in support of its decision-letter, makes two arguments. First, the only specific prohibition on dredges concerns foreign built ones, 46 U.S.C. § 292, and since all agree that the Esperance III is not foreign built, there is no bar preventing the Esperance III from performing domestic dredging. Second, Customs argues that all definitions of the terms "trade" or "merchandise" refer to items of value and that Customs has consistently interpreted the statute as not prohibiting vessels barred from engaging in coastwise trade to be thereby prohibited from "merely plying the waters of the United States with no cargo or with cargo of no value." Since spoil which has no value is neither "merchandise" nor "trade" by this reasoning, and since the spoil dredged here has no value, defendant Customs concludes there is no violation in using the Esperance III to perform the dredging under contract here.

Defendant Au argues that all that must be shown to sustain Customs' decision-letter is a "warrant in the record" and a "reasonable basis" in law. *Natural Resources Defense Council v. United States Nuclear Regulatory Commission,* 582 F.2d 166 (2d Cir. 1978). They contend this burden has been met. First, they maintain that the lack of any commercial value of the dredged spoil supports Customs' position that it did not constitute "merchandise." A reasonable basis in the law for the agency's definition of "coastwise trade" is found in. *United States v. Picou,* 71 F.2d 854, 855 (5th Cir. 1934), which, Au asserts, defined the term

"trade," as used in navigation acts, as synonymous with "business." Both defendants dispute plaintiffs' contention that Customs' decision-letter was inconsistent with earlier rulings and is therefore to be accorded less deference than is usually given administrative rulings.

Plaintiffs have now renewed their argument that § 883 bars the use of the Esperance III to carry valueless spoil for disposal because transportation of it is "coastwise trade," within the meaning of that term in § 883. They deny that Customs interpreted the body of that statute in its decision-letter so as to apply to the Esperance III. They argue that the term "coastwise trade" is neither restricted to "merchandise" nor confined to things of value. They point to Customs' own regulations requiring vessels in "foreign trade" to obtain "clearances," whether or not they carry a cargo, as refutation of the argument that the term "trade" has consistently been interpreted by Customs only to refer to items of value. In addition, plaintiffs cite cases in which courts have equated the terms "trade" and "commerce," *e. g., American Maritime Ass'n v. Stans,* 485 F.2d 765, 768 (D.C.Cir. 1973); *Philadelphia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). In this regard, plaintiffs claim that Customs' construction of the term "merchandise" was "based on an erroneous notion of commerce." Plaintiffs also raise the question of inconsistent interpretation, in particular calling the court's attention to an opinion by the Attorney General, which allegedly held that domestic dredging operations per se were in coastwise trade, 42 O.A.G. No. 13, at 4–6, as well as to numerous other purportedly inconsistent opinions by the Customs Service, *e. g., see* Opinion Letter, W. R. Johnson, Commissioner of Customs, No. 199085 (May 29, 1943) (unpublished).

◼ While there was disagreement at the preliminary injunction stage of the litigation, neither side now argues that valueless spoil is merchandise, independent of a notion of coastwise trade. Plaintiffs' position is that the plain meaning of the words in the first proviso of § 883 prohibits the ves-

sel from engaging in coastwise trade in any manner, and that the proviso is independent of and broader than the "body" of the statute. Indeed, it would be difficult to label as "merchandise" valueless polluted spoil material, which is being transported only for the purpose of disposal. The issue before the court, therefore, turns on whether the proviso to § 883, which refers to "coastwise trade," is broader than the body of the statute, which mentions only "merchandise," and which has been construed to refer only to things of value. I adhere to my decision of May 10, 1978 insofar as I am not persuaded that Customs' construction of the statute is unreasonable, or that adoption of that construction by the Corps was arbitrary or capricious.

The starting point for statutory construction is the plain language of the statute itself. As I indicated in my earlier decision denying the preliminary injunction, a cardinal rule of statutory construction is that the scope of a proviso is no broader than the language it modifies. Nonetheless, plaintiffs argue that the term "trade," like its linguistic cousin "commerce," requires a more expansive reading than that given it by Customs. Plaintiffs cite *Philadelphia v. New Jersey, supra,* where the Court held that waste material with no value whatsoever can be commerce. Since waste can be commerce, plaintiffs conclude that spoil can be (coastwise) trade. Several other cases are cited to similar effect, e. g., *Huus v. New York and Porto Rico Steamship Co.,* 182 U.S. 392, 21 S.Ct. 827, 45 L.Ed. 1146 (1901); *Harman v. Chicago,* 147 U.S. 396, 13 S.Ct. 306, 37 L.Ed. 216 (1893).

In *Philadelphia v. New Jersey,* however, the Court was dealing with very different concerns which are not applicable here. New Jersey had attempted to restrict another state's access to its remaining landfill space, in order to preserve this scarce natural resource. This was a case of economic protectionism among the states, a consideration completely absent here.

That waste can be in "interstate commerce" is not in dispute here. The fact that waste can be constitutionally cogniza-

ble commerce, however, does not mean that Congress intended the term "coastwise trade," as used in 46 U.S.C. § 883, to include worthless polluted spoil. Indeed, the broad reading given the term "commerce" as used in the Constitution may well be a reason why Congress did not use that term in this statute.

It has long been accepted that common legal terms, when used in a maritime law context, take on distinctive and often peculiar meanings. In this respect, Customs' argument that the term "coastwise trade" has been identified in the past with things of value is not without support. In *United States v. Picou, supra* at 855, the Fifth Circuit did note that, as used in the navigation acts, the term "trade" is synonymous with "business."

Terms such as "foreign trade" and "trade," as distinguished from "coastwise trade," also have their own histories and meanings; they are generated by the policies which gave life to the statutes in which they are found. The scope of these terms, plucked out of context, cannot be deemed controlling here.

■ Some support for the plaintiffs' position can be found in *Gillentine v. McKeand,* 426 F.2d 717 (1st Cir. 1970), in which a vessel was barred from carrying passengers in the coastwise trade because of prior foreign registry. However, the court's construction of the statute was consistent with and relied heavily on the construction given the statute by the Bureau of Customs. "Such a construction," said the court, " 'should be followed unless there are compelling indications that it is wrong.' " *Id.* at 721 (footnote omitted). In the absence of such indications, I am bound to adhere to Customs' construction of the statute regarding the Esperance III.

Both sides also seek support for their interpretations of the scope of the statute in its legislative history. Yet a review of the legislative record makes clear only one thing, that Congress, not too surprisingly, did not consider the problem of the dredging and transportation of valueless polluted spoil in coastwise waters. I am unable to

glean any insights from the repeated uses of the term "coastwise trade" in the legislative reports, e. g., H.R.Rep. 118, 74th Cong., 1st Sess. (1935). Repeated use of the term without elaboration could well be used as support by either side. Similarly, plaintiffs' reliance on the fact that congress, on two occasions, over a 40-year span, used the broader ("coastwise trade") language in amending the statute, is also susceptible to conflicting interpretations. While it is true that Congress repeatedly used the broader term, arguably indicating that the scope of the coverage of the amendments was broader than the body of the statute, it is also true that Congress repeatedly attached these amendments onto the body of § 883 as "provisos," giving rise to the opposite inference.

It is worth observing here that the *Gillentine* court found the legislative history as ambiguous as I did.[2]

The Customs decision-letter is also consistent with the legislative scheme apparent here. In 46 U.S.C. § 861, Congress explicitly set out that its purpose was to establish a strong merchant marine. The courts have consistently understood this to be Congress' intent, e. g., *Pennsylvania Railroad Co. v. Dillon, supra.* This purpose was furthered by the limitations placed on "foreign" vessels with respect to trade between points within the United States by 46 U.S.C. § 883. In this case, the Coast Guard, by requiring the Esperance III to be converted to a dredge a second time in the United States, certainly acted consistent with this legislative scheme. Similarly, Customs' narrowly-drawn decision-letter, that the American-built and refitted Esperance III could be used to dredge polluted spoil for disposal only, is in keeping with Congressional intent.

Plaintiffs raise an additional point. They claim that the Supreme Court has said a vessel can be documented in one of two ways, either by enrollment, if it is engaged in interstate commerce, or by registration, if it is in foreign commerce. *The Mohawk,* 3 Wall. 566, 571, 70 U.S. 566, 571, 18 L.Ed. 67 (1865); *Gibbons v. Ogden,* 9 Wheat. 1, 214–15, 22 U.S. 1, 94, 6 L.Ed. 23 (1824). Plaintiffs contend that Customs' ruling creates a third category, as the Esperance III was registered yet not engaged in foreign commerce. They argue that the dredging involved under the contract constituted coastwise trade, and that only vessels which are enrolled can perform coastwise trade. In *The Mohawk, supra,* however, the Court held that the enrollment act of February 13, 1793, which is largely the ancestor of our current documentation statutes, related to vessels engaged in the "coasting trade and fisheries." *See* 46 U.S.C. §§ 11, 25, 251, 258, 263. As I have determined that, under 46 U.S.C. § 883, Customs could properly conclude that the Esperance III was not engaged in "coastwise trade" while dredging valueless spoil, registration of the ship was adequate for the particular work performed.

It is true that registration generally relates to vessels in foreign commerce. However, plaintiffs oversimplify the case law concerning the interface of the various registration and enrollment statutes. The line demarking the two areas is not so strict. There is no hard dichotomy as would require the kind of categorizing plaintiffs suggest. For example, plaintiffs' purported explanation of the documentation statutes would not accommodate such cases as *The Maracaibo,* 1936 A.M.C. 221, T.D. 48136 (Customs Court, 3d Div., New Orleans, 1936). That case involved a duty imposed on a United States dredge for foreign-made repairs. The Maracaibo was a dredge

---

2. 426 F.2d 717, 721:

The legislative history of the proviso provides no basis for disagreement with the executive construction. The proviso was adopted in 1935 for the purpose of protecting American vessels then engaged in the coastwise trade from potential competition by foreign vessels that had been built in the United States and might have been returned to American ownership. There is no evidence that Congress considered the precise question now before us. And since the adoption of the executive construction giving the proviso independent effect is perfectly consistent with the statutory purpose, we are bound by that interpretation.
(Footnotes omitted.)

which, unlike the Esperance, was not self-propelled nor did it have any cargo area. It was taken from one position to the next by tug and fastened to the sea floor. The court did find it to be a "vessel." However, it was found not to be within the definition of a "vessel documented under the laws of the United States to engage in the foreign or coasting trade." This would lead one to conclude that, for purposes of the documentation statutes as well, all dredging does not necessarily constitute coastwise trade.

Additional support for the adequacy of registration for the Esperance III to perform the dredging involved here can be found in 46 U.S.C. § 292, which states that a foreign-built dredge shall not engage in dredging in the United States unless it is "documented" as a United States vessel. Although the statute does not apply directly to this case, because the Esperance III was not a foreign-built dredge, it does suggest that American-built dredges should be able to engage in dredging in the United States without being licensed and enrolled to engage in coastwise trade. Rather, "documentation" of some kind is apparently adequate. This is because at other points in the law there are separate prohibitions on foreign-built dredges which bar them from engaging in coastwise trade. 46 U.S.C. § 883. Such foreign-built dredges therefore had to be registered rather than enrolled. This provides support for the defendants' position that an American-built dredge which is merely registered could perform the contractually required dredging in the United States. Congress is unlikely to have intended that foreign-built dredges should receive better treatment than American-built dredges.

Alternatively, if the court were to accept plaintiffs' reading of the registration statutes as applying only to international trade,

the final phrase in § 292, which allows "documented" foreign vessels to engage in dredging, would be rendered meaningless. The court must avoid such a result, even if it requires reexamining the ancient documentation statutes.

In its decision-letter, Customs concluded two things: (1) that valueless polluted spoil is not merchandise, and (2) that dredging such spoil is not coastwise trade. This is consistent with the elaboration of the opinion submitted by affidavit by Customs. In light of this and the earlier "coastwise trade" discussion, plaintiffs' claim that Customs' construction of the term "merchandise" in its decision-letter was based on an erroneous notion of commerce must be rejected.

Prior inconsistent administrative interpretation is another charge levelled at defendant Customs by plaintiffs. If true, this would argue for according less than the usual deference to the administrative agency here, although it would not compel reversal. With the exception of an opinion of the Attorney General, the administrative decisions to which the court has been cited have been remarkably consistent for a long period of time. Prior decisions by Customs, the agency charged with enforcing this statute, have held consistently that only passengers or merchandise—"things" of value—are encompassed by the term "coastwise trade" in the proviso. It appears, moreover, that the precise issue raised here had not been presented to Customs prior to the decision-letter concerning the Esperance III.[3]

As noted in my earlier decision, this court's scope of review is very narrow. Great deference must be given Customs' decision. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Zemel v. Rusk*, 381 U.S. 1, 11, 85 S.Ct. 1271,

---

**3.** The court has reviewed numerous earlier decision-letters by Customs interpreting 46 U.S.C. § 883. None of them considered the status of dredging and then transporting valueless polluted spoil for the sole purpose of disposal. Nonetheless, in construing the statute, Customs has consistently held that it applies only to transportation related to things of value. Since failure to have considered this specific question earlier means that Customs could not

have changed its construction of the statute here, I have no occasion to address plaintiffs' argument that Customs had a duty to state reasons for its "change in policy." Moreover, I note that in its letter Customs did state reasons for its decisions. These included that the spoil was valueless, that it was a liability to the government, and that passenger transportation had been deemed coastwise trade in the past.

1278, 14 L.Ed.2d 179 (1965); *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969).

> To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings.

*Unemployment Commission v. Aragon*, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed.2d 136 (1946).

As I have determined that neither the legislative history nor prior court or administrative interpretations of the statute undermine the conclusions reached in Customs' decision-letter, I must deny plaintiffs' demand for declaratory relief. The Corps will not be barred from awarding federal contracts to transport valueless polluted spoil to designated dump sites in vessels similar to the Esperance III.

The plaintiffs' motion for final judgment is denied. Defendants' motion for summary judgment is granted.

Counsel for defendant Au is directed to prepare a proposed judgment, on notice to defendant Customs and both plaintiffs.

So ordered.