UNITED STATES of America,
Plaintiff‑Appellee,

v.

Victor Manuel STUART–CABALLERO,
Amador Ortega and Armando Arias
Diaz, Defendants‑Appellants.

No. 81–5607.

United States Court of Appeals,
Eleventh Circuit.

Sept. 24, 1982.

While on patrol in international waters south of Florida on the night of October 8, 1980, a Coast Guard cutter spotted a ship on radar. The Coast Guard moved to intercept the ship and, with seamen training a large spotlight on the ship's stern, identified it as the THOMAS E, out of Norfolk, Virginia. The cutter's captain decided to board the THOMAS E, but the three crewmen on board the THOMAS E doused all lights and attempted evasive action. A high seas chase ensued, continuing until the cutter managed to disable the vessel with cannon fire nine hours later. Throughout the chase, seamen using nightscopes kept continuous surveillance of the ship, but never saw more than three people aboard. Once the THOMAS E was disabled, a boarding crew was sent to search the ship. Before boarding, the crew could smell the strong odor of marijuana coming from the ship. The three persons on board were arrested and a general search uncovered more than 21,600 pounds of marijuana stored in the engine room and two forward cargo holds.

On appeal appellants first challenge the constitutionality of section 955a. They argue that the United States cannot, consistent with international law and due process, extend its criminal narcotics laws to vessels on the high seas absent proof of an intent to distribute the narcotics in the United States. This argument was foreclosed by recent decisions of this court. In *United States v. Marino-Garcia*, 679 F.2d 1373 (11th Cir. 1982); *United States v. Liles*, 670 F.2d 989 (11th Cir. 1982), and *United States v. Riker*, 670 F.2d 987 (11th Cir. 1982), we rejected similar challenges to the constitutionality of section 955a. Appellants also contend that the statute is unconstitutional because it does not require a showing of voluntary or knowing possession of the controlled substance. The very terms of section 955a belie this contention, however, because the statute requires a showing of possession *with intent to distrib-*

Donald I. Bierman, Benedict P. Kuehne, Miami, Fla., for defendants-appellants.

Paul Morris, Miami, Fla., for Ortega and Diaz.

Robert J. Bondi, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before VANCE and JOHNSON, Circuit Judges, and ALLGOOD *, District Judge.

PER CURIAM:

Appellants were convicted after trial by jury of one count of possession of marijuana on an American vessel with intent to distribute, in violation of 21 U.S.C. § 955a and 18 U.S.C. § 2. There is no merit to any of the contentions raised on appeal, and we therefore affirm.

* Honorable Clarence W. Allgood, U. S. District Judge for the Northern District of Alabama, sitting by designation.

ute. The district court properly overruled defendants' motion to dismiss the indictment.

■ Appellant Stuart-Caballero contests the validity of the stop, search, and seizure of the THOMAS E because the government failed to show there was probable cause that criminal activity was occurring. Assuming there was no probable cause to believe a crime was being committed, a debatable point in light of the attempted flight, the Coast Guard has plenary authority to stop and board American vessels on the high seas. 14 U.S.C. § 89(a). Such a search may be for the purposes of ascertaining compliance with safety, documentation, customs, or narcotics laws and the Coast Guard needs neither probable cause nor reasonable suspicion to board. *United States v. Mazyak*, 650 F.2d 788, 790 (5th Cir. 1981), *cert. denied*, 455 U.S. 922, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982). Once on board, the Coast Guard has the authority to search all common areas of the ship. *United States v. DeWeese*, 632 F.2d 1267, 1270–71 (5th Cir. 1980), *cert. denied*, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 188 (1981). There being no reasonable expectation of privacy in the areas where the marijuana was found, the search and subsequent seizure were proper.

■ Appellants Ortega and Diaz contend that the prosecutor committed reversible error when he improperly commented on their decision not to testify. The prosecutor uttered two statements that form the basis for this contention. First, in opening argument the prosecutor said:

> The defendants may or may not have a different version [of the case]. This is the Government's version.

Later, when attacking the testimony of the one defendant who did testify, the prosecutor rhetorically asked why the witness failed to explain the possible reasons a mysterious fourth person would allow three strangers to board a boat loaded with $5.5 million worth of marijuana. The prosecutor then said:

> They didn't answer that question to your satisfaction, ladies and gentlemen. They didn't answer it at all.

It is clear that a prosecutor may not comment on a defendant's exercise of his right not to testify at his trial. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). In this circuit, improper prosecutorial comment may be established by showing that: (1) the prosecutor manifestly intended to comment on the defendant's silence, or (2) the character of the comment was such that a jury would naturally and necessarily construe it as a comment on the defendant's silence. *United States v. Harbin*, 601 F.2d 773, 777 (5th Cir.), *cert. denied*, 444 U.S. 954, 100 S.Ct. 433, 62 L.Ed.2d 327 (1979). Neither test was met in this case. First, appellants failed to show improper motive on the part of the government. Second, the comments, when taken in context, were mild assertions that could not reasonably be construed as improper comment. In his comment during summation, the prosecutor was merely attacking the credibility of one witness when he carelessly used the word "they." The comment during opening argument was even less objectionable. The district court three times instructed the prosecutor to refer to "the government's version" of the evidence, so the complained of statement can only reasonably be viewed as a response to the court's orders, and not an improper comment. *See id.*

■ Appellant Stuart-Caballero argues that the government failed to prove that on the date in question the THOMAS E was a vessel of the United States. The evidence showed that at the time of appellants' arrest the vessel bore on its stern the words "THOMAS E NORFOLK VA." The evidence also included a certified copy of its certificate of United States registry issued by the Coast Guard in Miami, Florida on May 13, 1980, less than five months from the date of appellants' arrest.

Under a comprehensive federal system of regulation of trading and fishing vessels, eligible ships that engage in trade with foreign lands are registered under a documentation procedure established in the Act of December 31, 1792, 1 Stat. 287 and now codified in 46 U.S.C. ch. 2. "The purpose of

a register is to declare the nationality of a vessel ... and to enable her to assert that nationality wherever found." *The Mohawk*, 70 U.S. (3 Wall.) 566, 571, 18 L.Ed. 67 (1866), *quoted in Douglas v. Seacoast Products, Inc.*, 431 U.S. 265, 272–73, 97 S.Ct. 1740, 1745, 52 L.Ed.2d 304 (1977) *and Anderson v. Pacific Coast Steamship Co.*, 225 U.S. 187, 199, 32 S.Ct. 626, 630, 56 L.Ed. 1047 (1912). A ship so registered is a "vessel of the United States" and retains that status until the documentation is surrendered with approval of the Secretary of Transportation. *Merchants National Bank v. Ward Rig No. 7*, 634 F.2d 952, 955–57 (5th Cir. 1981); 46 U.S.C. § 911. Registration of the THOMAS E was a temporary registration issued at a port other than its home port. The temporary status is of no present significance, however, and simply requires that its registration document be surrendered within ten days of its arrival at its home port of Norfolk, 46 C.F.R. § 67.35, the only port where its permanent documents can be issued. 46 C.F.R. § 67.19.

The name and home port of every documented vessel must be marked on its stern in letters of prescribed type, color and size. 46 U.S.C. § 46; 46 C.F.R. § 67.13–1. At the time of appellants' arrest, the THOMAS E bore the same name and home port on its stern as on its May 13, 1980 registration certificate.

The force of such evidence is dealt with by Wigmore as follows:

When the existence of an object, condition, quality, or tendency at a given time is in issue, the *prior existence* of it is in human experience some indication of its probable persistence or continuance *at a later period.*

The degree of probability of this continuance depends on the chances of intervening circumstances having occurred to bring the existence to an end. The possibility of such circumstances will depend almost entirely on the nature of the specific thing whose existence is in issue and the particular circumstances affecting it in the case in hand. That a soap bubble was in existence half an hour ago affords

no inference at all that it is in existence now; that Mt. Everest was in existence ten years ago is strong evidence that it exists yet; whether the fact of a tree's existence a year ago will indicate its continued existence today will vary according to the nature of the tree and the conditions of life in the region. So far, then, as the *interval of time* is concerned, no fixed rule can be laid down; the nature of the thing and the circumstances of the particular case must control.

2 Wigmore, Evidence § 437(1) (Chadbourn rev.1979) (emphasis in original) (footnote omitted).

Stuart-Caballero misplaces reliances on *United States v. Platenburg*, 657 F.2d 797 (5th Cir. 1981), in which Unit A of the fifth circuit held after September 30, 1981, that a seven year old certificate was not sufficient by itself to establish FDIC coverage. Continued FDIC insurance coverage, however, depends on periodic payment of premiums. *See United States v. Brown*, 616 F.2d 844, 848 (5th Cir. 1980). Applying the logic of Wigmore it is apparent that a vessel registration less than five months old creates a very different probability of continuance than does an FDIC certificate that is several years old. Even so, *United States v. Maner*, 611 F.2d 107 (5th Cir. 1980), a case that is binding authority in this circuit, holds that a five year old FDIC certificate coupled only with evidence of a bank's continued display of copies of the certificate at the time of trial constituted sufficient proof of coverage.

The evidence before us is much stronger. We have no difficulty in concluding that the THOMAS E was proved to be a vessel of the United States.

■ Finally, all three appellants contend that the evidence was also insufficient to establish anything more than their mere presence near the contraband. The evidence showed: (1) Ortega's story notwithstanding, only three persons were aboard the THOMAS E; (2) the ship had nearly eleven tons of marijuana aboard and all defendants had to be aware of it given its pervasive odor; (3) more than one person

was needed to load and off-load the large quantity of marijuana on board; and (4) the attempted flight evinced guilty knowledge. More than mere presence has been established in this case. The evidence is more than sufficient to sustain the jury's verdict. *See United States v. Liles*, 670 F.2d at 992–93; *United States v. Riker*, 670 F.2d at 989; *United States v. Mazyak*, 650 F.2d at 790–91 & n.2.

AFFIRMED.