**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Vincent Anthony RUTKOWSKI,**
**Defendant-Appellant.**

**No. 86–3278.**

United States Court of Appeals,
Eleventh Circuit.

April 13, 1987.
Rehearing and Rehearing En Banc
Denied June 8, 1987.

---

Kirk N. Kirkconnell, Warren K. Lindsey, Muller, Kirkconnell and Lindsey, P.A., Winter Park, Fla., for defendant-appellant.

Robert W. Merkle, Paul J. Moriarty, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Before RONEY, Chief Judge, EDMONDSON, Circuit Judge, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

Vincent Rutkowski was indicted in the United States District Court for the Middle District of Florida for violations of 21 U.S.C.A. secs. 841(b)(1)(A) (West Supp.1986) & 846 (West 1981) (conspiracy to possess cocaine with intent to distribute), 21 U.S.C.A. sec. 963 (West 1981) (conspiracy to import cocaine), 21 U.S.C.A. secs. 952(a) (West Supp.1986) (importing cocaine), and 21 U.S.C.A. secs. 841(a)(1) (West 1981) & 841(b)(1)(A) (West Supp.1986) (possession of cocaine with intent to distribute). A jury convicted Rutkowski of all four offenses. He appeals to this court, alleging errors in his trial. We affirm.

On November 27, 1985, a radar intercept specialist for the United States Customs Service noticed an aircraft approximately 115 miles south of the Grand Bahamas flying toward southern Florida. While in Bahamian air space, the aircraft was not using its transponder (a radio beacon necessary for instrument flight), in violation of a Bahamian law that requires instrument flight between sunset and sunrise. After ascertaining that the pilot of the airplane had not filed a flight plan with the Federal Aviation Administration, the radar intercept specialist notified the pilots of two U.S. Customs jets, who pursued the aircraft as it flew toward Florida. The pilots noted that the airplane, a Piper Geronimo, was flying without lights.

Approximately two hours after it was first sighted, the Piper landed at the Orlando Executive Airport in Orlando, Florida. Ernest C. Szuminski, the pilot of one of the

U.S. Customs aircraft, landed behind the Piper and arrested its passengers—Rutkowski and Jerry Ricci, Jr. At trial, Szuminski testified that the door of the Piper was on its right side and that Rutkowski exited first, indicating that he was sitting in the co-pilot's seat.

When Szuminski inspected the Piper, he discovered that between four to six passenger seats had been removed, leaving only the pilot and co-pilot seats. Behind those two seats, Szuminski found four golf bags and a cooler containing approximately 130 kilograms of cocaine with a street value of between $30,000.00 and $50,000.00 per kilogram. Behind a curtain at the rear of the aircraft, Szuminski discovered four gasoline containers. Government agents also found maps, navigational guides, a duffel bag containing eleven additional packets of cocaine, and a small spiral notebook that appeared to be a fuel log.

Prior to the joint trial scheduled for Rutkowski and Ricci, the two defendants and their attorneys participated in plea negotiation conferences [1] with the Assistant United States Attorney and Drug Enforcement Administration agent in charge of the case. Ricci told the government representatives that Rutkowski had been the one keeping the fuel log. After plea negotiations with Rutkowski broke down, the government obtained a handwriting exemplar from him and requested an expert to compare that exemplar to the handwriting in the fuel log. Although defense counsel before the trial presented a motion to bar admission of the handwriting analysis, the court allowed the handwriting expert to testify at trial that the handwriting in some parts of the log was Rutkowski's.

Ricci entered a plea of guilty to all four counts charged. Rutkowski pled not guilty and was tried before a jury in February, 1986. At trial, Szuminski testified that handwritten notes at the beginning of the fuel log indicated a round-trip flight from Bimini to northern Colombia and that the

---

1. The record is unclear as to whether Rutkowski and Ricci were both present or whether the government negotiated with them separately; at oral argument, Appellant's counsel said that he believed that Rutkowski and Ricci were not in the same room during the negotiations. We assume for the sake of argument that the two men were participants in joint plea negotiations.

navigational maps indicated a flight between Florida and Colombia. The rest of the fuel log, according to Szuminski, contained references to fuel contained in the main and auxiliary tanks of the aircraft and a portable "jug". Such a fuel log is used to avoid tipping the aircraft with uneven distribution of fuel or running out of fuel during the flight.

Rutkowski presented no evidence and moved for a judgment of acquittal. The court denied the motion, and the jury found him guilty on all four counts. He now appeals, requesting that this court overturn his conviction or, in the alternative, grant him a new trial. We decline to take either course.

First, Rutkowski argues that the trial court erred in failing to grant his motion for mistrial based on comments the prosecutor made in his closing argument. In that argument, the prosecutor stated:

> But again, the crime is right here, and there is no explanation for anybody being on that plane who didn't know what was going on because there was a need for something on this flight.

Rutkowski objected and moved for a mistrial. The district court denied the motion.

■ Rutkowski contends that the prosecutor's comment implied that if Rutkowski had a different explanation for his presence on the plane, he should have testified. It does not appear that the prosecution manifestly intended to comment on the defendant's silence. Moreover, the comment itself did not necessarily invite such a construction. *See United States v. Stuart-Caballero*, 686 F.2d 890, 892 (11th Cir.1982), *cert. denied*, 459 U.S. 1209, 103 S.Ct. 1202, 75 L.Ed.2d 444 (1983). The comment could more reasonably be viewed as a comment on logical inferences from all of the evidence rather than an argument requiring a negative inference from the defendant's failure to testify. Therefore, it was not an improper comment.

Rutkowski's next argument concerns the jury instructions regarding conspiracy. His defense counsel requested that the district court instruct the jury that "a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a co-conspirator." The district court refused. Rutkowski now contends that the omission of that request deprived him of a key element of his defense.

■ An appellate court should reverse a conviction because a trial court refused to give a requested jury instruction only if (1) the requested instruction was substantially correct; (2) the instruction is not addressed in the charge actually given; and (3) the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense. *United States v. Lopez*, 758 F.2d 1517, 1521 (11th Cir.1985); *United States v. Walker*, 720 F.2d 1527, 1540–41 (11th Cir.1983), *cert. denied*, 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984). In this case, the requested instruction was substantially correct, but the other two criteria are not met.

■ Although the district court judge did not give a verbatim rendering of the requested instruction, he did instruct the jury as follows:

> Now, mere presence at the scene of the crime or mere presence in the area of where an offense is being committed or mere association with the person or persons who are violating the law is not in and of itself sufficient to support a conviction of a conspiracy or a violation of the statutes which are set forth in the indictment. Rather the burden is on the United States to prove that the defendant knowingly and intentionally became a member of the conspiracy or committed the offenses charged in the indictment.

That instruction adequately covered the issue involved in the requested instruction and, accordingly, did not impair Rutkowski's ability to present an effective defense.

Rutkowski also argues that the judge erroneously instructed the jury in another section of the charge. Defense counsel objected to the portion of the instructions that stated:

> For instance, if two or more persons are found actively engaged together in

the commission of a crime against the United States, they could be found guilty of a conspiracy without proof of any specific agreement or understanding between them because proof that two or more persons were present participating in the crime is itself evidence of the fact that they had an agreement or understanding among themselves to commit the offense.

Evidence of actions, conduct, activities and all the facts and circumstances of the case should be considered by you in determining whether there was an agreement and a conspiracy. The success or failure of the alleged conspiracy is not an issue in this case. Proof of conspiracy to violate the narcotic or drug laws need not establish that there was any dealing or transactions in narcotics or drugs or that the members of the conspiracy handled drugs. The proof required is that the members of the conspiracy entered into the agreement to violate the narcotic and drug laws of the United States.

▪ Rutkowski argues that this section instructed the jury to find him guilty merely because he was present aboard the airplane. This argument ignores the first sentence of the section, which states "if two or more persons are found *actively engaged together* in the commission of a crime against the United States ... proof that two or more persons were present *participating in the crime....*" (emphasis added). That language clearly conveys the need for more than mere presence. This section of the jury instruction did not deprive Rutkowski of the opportunity to effectively present his defense. Certainly, the trial judge's jury charge, taken as a whole, was accurate and fair.

Rutkowski's next argument concerns the admission of the fuel log. At the trial, the government's handwriting expert testified that the portion of the notebook that reflected the fuel consumption of the airplane was in Rutkowski's handwriting. Rutkowski contends that because the government first learned of the significance of the fuel log during joint plea negotiations with Rutkowski and Ricci, Federal Rule of Criminal Procedure 11(e)(6) prohibited its use against Rutkowski at trial.

▪ As an initial matter, we hold that Rutkowski has failed to preserve this issue for appeal. Although defense counsel objected before trial to the admission of the evidence, the record reveals no objection during the trial. "The overruling of a motion in limine is not reversible error, only a proper objection at trial can preserve error for appellate review." *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir.1980); [2] *see also Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1503–04 (11th Cir. 1985).

▪ Even if Rutkowski had properly objected at trial, admission of the evidence would not have been error. In this case, the government did not attempt to admit any evidence of actual statements made during the plea negotiation conferences. The government simply introduced evidence, the logbook, that it had had in its possession from the day that Rutkowski was arrested. At most, Ricci's identification of Rutkowski's handwriting in the fuel log prompted the government to examine that evidence further.

In regard to the handwriting analysis and expert testimony that the government obtained following Ricci's statements, Rutkowski urges us to adopt a "fruit of the poisonous tree" analysis similar to that used in *Miranda* violations. *See generally, Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Because no statement made in connection with plea negotiations was allowed into evidence in this case, we conclude that Rule 11(e)(6)(D) was not violated here.

Rule 11(e)(6) is a relatively recent innovation in criminal procedure. Until 1975, Rule 11 simply listed the permissible pleas and the prerequisites for acceptance of such a plea. In 1975, Congress approved a

---

**2.** In *Bonner v. City of Pritchard,* 661 F.2d 1206 (11th Cir.1981), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

major revision of the Federal Rules of Criminal Procedure. As a part of that revision, Congress added Rule 11(e)(6), which provided: "Evidence ... of statements made in connection with, and relevant to, [a withdrawn guilty plea, a plea of nolo contendere, or an offer to plead guilty or nolo contendere] is not admissible in any civil or criminal proceeding against the person who made the plea or offer...." [3] Federal Rules of Criminal Procedure Amendments Act of 1975, Pub.L. No. 94–64, sec. 3, 89 Stat. 370 (1975).

■ Appellant's exclusionary argument hinges not on a provision of the Constitution, but upon a statute. Thus, to evaluate appellant's contention we must construe the scope of Rule 11(e)(6)'s limitation. In considering Rule 11(e)(6), our starting point is the language of the rule itself. It excludes from admissibility evidence of "statements". Moreover, it makes no reference to anything other than evidence of "statements" as being excludable. The word "statement" is not defined by the Rule; so, its ordinary meaning prevails. *Perrin v. United States*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). We believe if Congress wished for Rule 11(e)(6) to sweep more broadly Congress would have so provided. Accordingly, we conclude evidence gained by the government that is not evidence of a statement made in plea negotiations is not barred by Rule 11(e)(6).

Because the language of Rule 11(e)(6) is a clear expression of Congressional intent, we need not resort to the legislative history of the Rule. *See United States v. Rojas-Contreras*, 474 U.S. 231, 106 S.Ct. 555, 557, 88 L.Ed.2d 537 (1985). We have looked at that history, however. *See, e.g., Proposed Amendments to Federal Rules of Criminal Procedure, Hearings on H.R. 6799 before the Subcomm. on Crim. Justice of the House Comm. on the Judi-*

*ciary*, 93d Cong., 2d Sess. (1974); 121 Cong.Rec. 25,841–860 (1975). It is in no way inconsistent with our conclusion. It is clear that Congress never considered including derivative evidence in the prohibition. Of course, we cannot know how Congress would assess the competing demands of encouraging candor in plea negotiations and of just adjudication of criminal cases in light of all the facts, if Congress were to face squarely the question of use of evidence derived from statements made in plea negotiation. We are, however, certain that it is for Congress and not for the courts alone to strike the appropriate balance among such values. *Cf. Marchetti v. United States*, 390 U.S. 39, 60, 88 S.Ct. 697, 708–09, 19 L.Ed.2d 889 (1968) (Harlan, J.) (case involving provisions of Internal Revenue Code). Accordingly, we decline to expand Rule 11(e)(6) beyond its plain terms and to impose the innovative evidentiary exclusions urged by appellant.

Rutkowski's final argument is that the district court erred in denying his motion for acquittal due to insufficient evidence. We recognize that the evidence in this case is limited, but so is our standard of review. This court, construing all of the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), must determine whether the jury could have believed the defendant guilty beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

■ According to Rutkowski, the evidence shows only that he was a passenger in the plane. Looking at the evidence in the light most favorable to the government, we disagree. There was a relatively

---

**3.** In 1979 and 1982, Congress further amended Rule 11. Those amendments, however, did not change the basic rule of inadmissibility. The current version of the Rule is as follows:

> *(6) Inadmissibility of Pleas, Plea Discussions, & Related Statements.* Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant

who made the plea or was a participant in the plea discussions:

> \*   \*   \*   \*   \*   \*

> *(D)* any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

Fed.R.Crim.Proc. 11(e)(6)(D) (1986).

large amount of cocaine (130 kilograms) contained in a relatively small space. The rear passenger seats had been removed from the airplane, and the cocaine was in *unlocked* containers easily accessible to anyone sitting in the co-pilot's seat. According to evidence introduced at trial, Rutkowski is an FAA certified mechanic, and the fuel log indicates that he took an active part in the flight as a member of the air crew. Furthermore, trial testimony established that fueling from jugs in the manner indicated by the fuel log is extremely difficult, if not impossible without help. Reasonable jurors can believe that drug dealers do not invite untainted persons to assist in operating a vessel carrying millions of dollars worth of contraband. *United States v. Cruz-Valdez*, 773 F.2d 1541, 1546 (11th Cir.1985).

Given all of that evidence, a reasonable jury could have believed beyond a reasonable doubt that Rutkowski knowingly participated in a conspiracy to import cocaine into the United States. *Cf. United States v. Vidal-Hungria*, 794 F.2d 1503 (11th Cir. 1986); *United States v. Cruz-Valdez*, 773 F.2d 1541 (11th Cir.1985).

Accordingly, we AFFIRM.