[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15110
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20008-CMA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL RODRIGUEZ,
a.k.a. Morgie,
LOUIS ROBINSON,
a.k.a. Big Lou,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(January 21, 2015)

Before TJOFLAT, WILSON and JULIE CARNES, Circuit Judges.

PER CURIAM:

Following a jury trial, Daniel Rodriguez and Louis Robinson were convicted of conspiracy to commit Hobbs Act robbery, under 18 U.S.C. § 1951(a), two substantive counts of Hobbs Act robbery, under the same, and discharging a firearm during and in relation to a crime of violence, under 18 U.S.C. § 924(c)(1)(A)(iii).  Rodriguez and Robinson, along with others, participated in a string of armed and unarmed robberies of retail stores in South Florida.  In one of those robberies, Robinson shot the clerk of a jewelry store.  Both defendants appeal their convictions and total life sentences.

I.

Robinson and Rodriguez both argue that the district court erred in admitting the expert testimony of an FBI agent, David Magnuson, concerning cell-site data that placed them at the scenes of several of the robberies.  They specifically challenge the court's failure to hold a *Daubert*[1] hearing before qualifying him as an expert.

We generally review decisions regarding the admissibility of expert testimony for abuse of discretion.  *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc).  Abuse-of-discretion review applies not only to the decision of whether evidence is admissible, but also to what proceedings the court

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).

uses to reach that determination. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176 (1999).

We have previously held that the overruling of a motion in limine does not preserve an evidentiary issue for appeal. *United States v. Rutkowski*, 814 F.2d 594, 598 (11th Cir. 1987) (per curiam). Rather, an objection at trial is required to preserve an issue. *Id*. The Court has noted that a motion in limine is insufficient to preserve an evidentiary issue because it may address hypothetical concerns that may not arise during the course of a trial. *United States v. Khoury*, 901 F.2d 948, 966 (11th Cir. 1990), *modified on other grounds*, 910 F.2d 713 (11th Cir. 1990). However, as of the 2000 amendments, the Federal Rules of Evidence state that a "definitive" pre-trial ruling need not be renewed to preserve the issue for appeal. Fed. R. Evid. 103(b).

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A qualified witness may offer expert testimony if: (a) the witness's scientific, technical or specialized knowledge is helpful to a trier of fact; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the witness reliably applied the principles and methods to the facts of the case. Fed. R. Evid 702. Under *Daubert*, the trial court must determine whether an expert's testimony is based on reasoning or methodology that is scientifically valid and whether that methodology can be

applied to the facts at issue. *Daubert*, 509 U.S. at 592–93, 113 S. Ct. at 2796; *see also Kumho Tire Co.*, 526 U.S. at 141, 119 S. Ct. at 1171 (clarifying that *Daubert* applies to all expert testimony, not just scientific testimony). *Kumho Tire Co.* makes clear, however, that while the court must serve as a gatekeeper, it need not conduct a formal hearing "where the reliability of an expert's methods is properly taken for granted . . . ." 526 U.S. at 152, 119 S. Ct. at 1176.

As an initial matter, while the government argues otherwise, we treat this issue as preserved. The district court issued a definitive pre-trial ruling on the admissibility of Magnuson's testimony. Accordingly, the defendants were not required to renew their pre-trial objection to his status as an expert. *See* Fed. R. Evid. 103(b).

As to the *Daubert* issue, it is clear that a district court need not conduct a *Daubert* hearing where one would be unnecessary. *See Kumho Tire Co.*, 526 U.S. at 152, 119 S. Ct. at 1176. The court here, in large part, declined to hold a hearing because it had available to it the testimony of the same witness, on the near identical issue, from a case before a different judge in the same court. Rodriguez and Robinson, neither here nor below, have argued that the two cases presented a different question. If anything, the testimony in this case was less controversial than in the previous case, as Magnuson did not testify here that a cell phone call necessarily connects to the nearest tower, but more generally testified that a cell

4

phone cannot connect to a tower that is outside its range, and stated that his maps were based on estimates of cell phone ranges. The minimal reliability of that conclusion, required by *Daubert*, could be said to be "properly taken for granted," such that a hearing was not warranted. *See Kumho Tire Co.*, 526 U.S. at 152, 119 S. Ct. at 1176. Accordingly, we conclude that the district court did not abuse its discretion in not holding a *Daubert* hearing.

We also note that we will not consider Robinson's argument that the cell site data collection violated his Fourth Amendment rights. We will not consider issues raised for the first time in a reply brief. *See United States v. Britt*, 437 F.3d 1103, 1104–05 (11th Cir. 2006) (per curiam).

## II.

Rodriguez next argues that the court erred in admitting certain out-of-court statements against him. The statements were made by a now-deceased co-conspirator, and were testified to by that co-conspirator's girlfriend. The court admitted the statements under the forfeiture by wrongdoing hearsay exception, found in Fed. R. Evid. 804(b)(6). Rodriguez argues that the admission violated the Rules of Evidence and his Confrontation Clause rights.

We review evidentiary rulings for an abuse of discretion. *United States v. Henderson*, 409 F.3d 1293, 1297 (11th Cir. 2005). Under abuse-of-discretion review, we will affirm even if we would have reached a different conclusion, so

5

long as the district court's ruling fell within a range of possible conclusions and did not involve a clear error of judgment or an incorrect legal standard. *United States v. Lyons*, 403 F.3d 1248, 1255 (11th Cir. 2005).

Under the Federal Rules of Evidence, hearsay statements are generally not admissible unless otherwise provided. Fed. R. Evid. 802. One exception to the general hearsay rule is that hearsay testimony is admissible where it is "offered against a party that wrongfully caused . . . the declarant's unavailability as a witness, and did so intending that result." Fed. R. Evid. 804(b)(6). The government must demonstrate that the exception applies by a preponderance of the evidence. *United States v. Zlatogur*, 271 F.3d 1025, 1028 (11th Cir. 2001) (per curiam). In a case that did not directly involve the application of the Federal Rules of Evidence, the Supreme Court suggested that Rule 804(b)(6)'s intent requirement means that the exception applies only where the defendant acts with the purpose of making the witness unavailable. *Giles v. California*, 554 U.S. 353, 367–68, 128 S. Ct. 2678, 2687–88 (2008). *Giles* primarily involved the common-law forfeiture-by-wrongdoing exception to the Sixth Amendment's Confrontation Clause. 554 U.S. at 355, 128 S. Ct. at 2681.

The Supreme Court has made clear that a violation of a court's hearsay rules does not necessarily mean that a defendant's Sixth Amendment confrontation rights have been violated. *California v. Green*, 399 U.S. 149, 155–56, 90 S. Ct.

6

1930, 1933–34 (1970).  The admission of hearsay can implicate the Sixth Amendment, however, where the hearsay is "testimonial" in nature.  *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S. Ct. 1354, 1365 (2004).  Having not defined "testimonial" in *Crawford*, the Supreme Court later refined the test, explaining that hearsay was "testimonial" where it was made with the "primary purpose . . .to establish [facts] potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273–74 (2006).  The "primary purpose" of a statement should be evaluated objectively based upon circumstances and not upon the subjective intent of the individuals involved. *Michigan v. Bryant*, 131 S. Ct. 1143, 1156 (2011).

As an initial matter, we conclude that the Confrontation Clause was not implicated here as the challenged statements were not testimonial in nature.  *See Crawford*, 541 U.S. at 53–54, 124 S. Ct. at 1365.  Those statements plainly were not made with the primary purpose of aiding in a criminal investigation, as they were from private conversations Washington had with his girlfriend outside the trial context.  *See Davis*, 547 U.S. at 822, 126 S. Ct. at 2273–74.  Accordingly, the Confrontation Clause was not implicated in this case, and our analysis of any error begins and ends with the Federal Rules of Evidence.

In a pre-trial hearing, Rodriguez did not dispute that he was recorded as saying that he killed the co-conspirator "because [the co-conspirator] was a rat and

7

he was cooperating." Rodriguez did argue that the circumstances of the statements suggested that he may have been embellishing his credentials to someone who turned out to be a confidential informant. Beyond that, Rodriguez pointed to no evidence suggesting that he did not kill the co-conspirator or that he did so for a reason other than to make him unavailable to testify. While the government had the burden of demonstrating the applicability of the hearsay exception by a preponderance of the evidence, the fact that Rodriguez admitted to the killing, and stated that he killed Washington "because he was a rat," without any contrary evidence, met that burden. *See Zlatogur*, 271 F.3d at 1028. Accordingly, it was not an abuse of discretion for the district court to have concluded that the statements were admissible. *See Henderson*, 409 F.3d at 1297. The fact that the evidence suggests that Rodriguez had the intent to prevent the co-conspirator from divulging information regarding the criminal activities in question here is sufficient for the hearsay exception to apply. *See* Fed. R. Evid. 804(b)(6).

Robinson purports to adopt Rodriguez's argument as to this issue. As it is contained in Rodriguez's brief, the issue is specific to Rodriguez and does not apply to Robinson. Robinson provides no additional argument, and he fails to specify how the issue applies to him. Accordingly, we will not consider this issue as to Robinson. *See United States v. Esquenazi*, 752 F.3d 912, 929 n.11 (11th

8

Cir.), *cert. denied*, 135 S. Ct. 293 (2014) (explaining that a party cannot broadly adopt an issue that is individualized to another defendant).

### III.

Robinson argues that the testimony discussed in Issue II violated his Confrontation Clause rights, as they implicated him in the offense even though he was not implicated in the killing of the co-conspirator. He bases his argument on *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620 (1968).

We review evidentiary rulings, such as those on *Bruton* claims, for abuse of discretion. *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007). "For violations of the Confrontation Clause, harmless error occurs where it is clear beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Caraballo*, 595 F.3d 1214, 1229 n.1 (11th Cir. 2010) (internal quotation marks omitted).

As discussed above, the co-conspirator's statements, made to his girlfriend, were not testimonial in nature. Accordingly, the admission of the statements does not implicate the Confrontation Clause. *See Crawford*, 541 U.S. at 53–54, 124 S. Ct. at 1365. We have not yet addressed, in a published case, whether an out-of-court statement must be testimonial for *Bruton* to apply. However, we conclude that, as *Bruton* was premised on the Confrontation Clause, its protections only apply to testimonial statements. Every other Circuit to have considered the

9

issues has concluded the same. *See, e.g.*, *United States v. Berrios*, 676 F.3d 118, 128–29 (3d Cir. 2012); *United States v. Castro-Davis*, 612 F.3d 53, 65–66 (1st Cir. 2010); *United States v. Smalls*, 605 F.3d 765, 768 n.2 (10th Cir. 2010); *United States v. Johnson*, 581 F.3d 320, 325–26 (6th Cir. 2009); *United States v. Avila Vargas*, 570 F.3d 1004, 1008–09 (8th Cir. 2009).

Accordingly, here, there was no *Bruton* error. Robinson does not raise any argument that a severance was warranted outside of the *Bruton* context, and any such viable argument has been abandoned. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

## IV.

Robinson next argues that the district court should have ordered a mistrial based on the purported burden-shifting by the government in its closing argument. The government argued Robinson could not provide a viable innocent explanation for his presence in a pawn shop selling jewelry shortly after a robbery.

We review an argument that the government improperly shifted the burden of proof through questioning or argument, a type of prosecutorial misconduct, de novo. *United States v. Schmitz*, 634 F.3d 1247, 1266–67 (11th Cir. 2011). To reverse based on improper prosecutorial comments, we must conclude that the comments in question prejudicially affected the substantial rights of the defendant. *Id*. at 1267.

"[P]rosecutors must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence." *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992). Where such an argument "permeates the entire atmosphere of the trial," we will reverse for prosecutorial misconduct. *Id.* (internal quotation marks omitted). The prejudice that results from burden-shifting comments can be cured by a court's instructions regarding the burden. *Schmitz*, 634 F.3d at 1267.

Here, the challenged comments did not suggest that Robinson had any burden. Rather, it stated that, contrary to any argument that Robinson might advance, the evidence showed that Robinson was not at the pawn shop for an innocent reason. That comment is more about the strength of the government's evidence than Robinson's failure to explain himself and prove his innocence.

Even assuming, arguendo, that the government's comments were improper, there would be no reversible error here. As conceded by Robinson, the government's challenged argument, consisting of one statement, did not "permeate" the trial. *See Simon*, 964 F.2d at 1086. Further, the risk of confusing the jury was small, and any such risk could have been, and was, obviated by the use of curative instructions, both from the court and the government's own rebuttal closing. *See Schmitz*, 634 F.3d at 1267.

V.

11

Rodriguez next argues that the district court erred in improperly instructing the jury as to aiding and abetting liability for a § 924(c) offense, and that there was insufficient evidence to convict him of aiding and abetting Robinson's discharge of a gun. The trial was held before the Supreme Court clarified the standard for aiding and abetting a § 924(c) crime in *Rosemond v. United States*, 134 S. Ct. 1240, (2014).

Where a party did not object to a jury instruction in the district court, we review the instruction for plain error. *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000). Plain error is: "(1) [an] error; (2) that is plain and (3) affects substantial rights . . .but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Turner*, 474 F.3d at 1276 (internal quotation marks omitted). The defendant has the burden of satisfying the plain-error rule, including, under the third prong, showing that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding. *See United States v. Rodriguez*, 398 F.3d 1291, 1304–05 (11th Cir. 2005). Where the court fails to submit a material element to the jury, even if that error is plain, the error fails to meet the fourth prong of plain error review where the evidence of the omitted element was "overwhelming and essentially uncontroverted." *United States v. Cotton*, 535 U.S. 625, 632–33, 122 S. Ct. 1781, 1786 (2002) (internal quotation marks omitted). Reviewing for plain error, we

have held that the failure to instruct a jury on an essential element of an offense is harmless when it is clear beyond a reasonable doubt that a rational jury would have convicted if properly instructed. *United States v. Gutierrez*, 745 F.3d 463, 471 (11th Cir. 2014). Further, when applying plain error review, we may affirm a conviction where one of two multiple theories of liability was incorrectly instructed, so long as we are firmly convinced that the jury based its verdict on a properly instructed ground. *United States v. Range*, 94 F.3d 614, 619–20 (11th Cir. 1996) (affirming a § 924(c) conviction even though the instructions contained a flaw as to one alternative theory of liability).

It is illegal to use or carry a firearm during and in relation to a crime of violence or to possess a firearm in furtherance of such a crime. 18 U.S.C. § 924(c)(1)(A). Where the firearm is discharged, a minimum ten-year sentence, consecutive to the sentence for the underlying crime of violence, is required. *Id*. § 924(c)(1)(A)(iii). Generally, anyone who aids or abets anyone in committing a federal offense is punishable as if he had committed the offense. *Id*. § 2(a).

In order to be found guilty for aiding or abetting a crime, the government must prove that the defendant (1) took an affirmative act in furtherance of the offense, and (2) had the intent of facilitating the offense's commission. *Rosemond*, 134 S. Ct. at 1245. To meet the first prong, there need only be proof that the defendant took an affirmative act in furtherance of the underlying "crime of

violence" offense, as the commission of a crime of violence (or drug trafficking offense) is an essential element of a § 924(c) offense. *Id.*, 134 S. Ct. at 1247. To meet the second prong in this situation "an active participant in a drug transaction has the intent needed to aid and abet a §924(c) violation when he knows that one of his confederates will carry a gun." *Id.*,134 S. Ct. at 1249.

Under the *Pinkerton*[2] doctrine, § 924(c) liability may be imposed upon a defendant for the reasonably foreseeable actions of his co-conspirators. *United States v. Diaz*, 248 F.3d 1065, 1098–1100 (11th Cir. 2001). *Diaz* made clear that *Pinkerton* liability was distinct from aiding and abetting liability, and it specified that one could be found guilty under a *Pinkerton* theory even if he did not aid and abet the offense. *Id.* at 1099–1100.

As conceded by the government, in light of the intervening *Rosemond* decision, the jury instructions on aiding and abetting were plainly insufficient as applied to the § 924(c) count. The court instructed that a co-conspirator could be convicted of an offense under a theory of aiding and abetting, and alternatively instructed on *Pinkerton* liability where it was reasonably foreseeable that another member of a conspiracy would commit an offense. The pattern charge on aiding and abetting did not in any way communicate the notion of advance knowledge concerning the firearm. *Rosemond* held that, for a § 924(c) offense, an aider or

---

[2] *Pinkerton v. United States*, 328 U.S. 640, 66 S. Ct. 1180 (1946).

14

abettor must have sufficient actual advance knowledge that a gun would be used such that he could withdraw from the offense. *See Rosemond*, 134 S. Ct. at 1249–50. The jury instructions, therefore, allowed the jury to convict Rodriguez under an aiding and abetting theory without finding that he had actual knowledge that a cohort would have a gun with him. As Rodriguez did not object to the correctness of the aiding and abetting instruction below, we review for plain error. *See Prather*, 205 F.3d at 1270.

There was legally sufficient evidence upon which a properly instructed jury could have found Rodriguez guilty of aiding and abetting a § 924(c) offense. As the government points out in its brief, Rodriguez had some role in the planning of the robberies, the robberies appeared carefully orchestrated, and the robbers generally traveled in one car to each robbery. Further, there was evidence of three armed robberies, suggesting that Rodriguez must have known that a gun would be used in, at the very least, the latter two events. However, the Count 3 § 924(c) offense specifically charged the Count 2 robbery of the ABC Jewelry store (the only charged robbery where a gun was actually discharged) as the underlying crime of violence. Of the armed robberies discussed at trial, the ABC Jewelry store was the first in time. The fact that there were multiple armed robberies does not carry as much weight here as it otherwise might have had the charged offense occurred *after* another armed robbery. The fact that Rodriguez continued to

partake in the robberies after the ABC robbery suggests that he knew going in that a gun would be used, but it does not establish beyond a reasonable doubt that a rational jury necessarily would have reached that conclusion. *See Gutierrez*, 745 F.3d at 471. The evidence that Rodriguez bought bullets for his own gun also suggests that Rodriguez was not opposed to using a gun, but it does not do much to support a conclusion that he knew the ABC Jewelry robbery would be an armed robbery.

Standing alone, there was not enough evidence to say, beyond a reasonable doubt, that a rational and properly instructed jury would have convicted Rodriguez for aiding and abetting the commission of the Count 3 charge. *See Gutierrez*, 745 F.3d at 471. Aiding and abetting, however, was not the only theory under which the jury was permitted to find Rodriguez guilty of Count 3. The court instructed the jury as to *Pinkerton* liability, and the government, in discussing the § 924(c) charge in closing, appeared to rest solely on *Pinkerton* liability. The evidence discussed above does make it clear beyond a reasonable doubt that a rational jury would have convicted Rodriguez on the basis that it was reasonably foreseeable to him that a co-conspirator would have a gun. Therefore, the court's instructional error was harmless. *See Gutierrez*, 745 F.3d at 471; s*ee also Dean v. United States*, 556 U.S. 568, 572–74, 129 S.Ct. 1849, 1853–54 (2009) (holding that the enhanced minimum sentence for discharging a firearm requires no additional mens

rea specific to the firing of the gun). Applying plain-error review, we affirm despite the instructional error, because the record makes clear that the jury convicted Rodriguez under a *Pinkerton* theory of liability. *See Range*, 94 F.3d at 619–20.

## VI.

In his only challenge to his life sentence, Rodriguez argues that there was no evidence that he had a leadership role in the robberies. Accordingly, the U.S.S.G. § 3B1.1(a) four-level enhancement should not have been applied. Robinson purports to adopt this issue.

We review the enhancement of a defendant's offense level based on his role as an organizer or leader as a finding of fact reviewed for clear error. *United States v. Rendon*, 354 F.3d 1320, 1331 (11th Cir. 2003). At sentencing, the government bears the burden of proving by a preponderance of the evidence that the defendant played an aggravating role in the offense. *United States v. Yeager*, 331 F.3d 1216, 1226 (11th Cir. 2003). A defendant's failure to object to facts contained in a PSI constitutes an admission to those facts. *United States v. Bennett*, 472 F.3d 825, 833–34 (11th Cir. 2006) (per curiam).

The Sentencing Guidelines call for a four-level enhancement where the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a). The

guidelines commentary instructs that, in deciding whether someone was an organizer or leader, the following factors are relevant:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Id*. § 3B1.1 cmt. n.4. There is no requirement that all of those factors must be present to warrant the enhancement. *United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009). The commentary also states that more than one person can be considered an organizer or leader of an offense and that the adjustment does not apply to someone who merely suggests the commission of an offense. U.S.S.G. § 3B1.1 cmt. n.4); *see also United States v. Ndiaye*, 434 F.3d 1270, 1304 (11th Cir. 2006).

In order to warrant the § 3B1.1 enhancement, there must be evidence of both a leadership role and an extensive operation. *United States v. Yates*, 990 F.2d 1179, 1181–82 (11th Cir. 1993) (per curiam). In *Martinez*, we held that a defendant's admission that he "orchestrated" drug shipments was not sufficient to warrant the enhancement. *Martinez*, 584 F.3d at 1027–29. Rather, *Martinez* made clear that the enhancement required a showing of a "necessary hierarchical relationship." *Id*. at 1030. In another case, however, specific evidence that the

18

defendant had directed the activities of several co-conspirators was sufficient for the enhancement. *United States v. Mesa*, 247 F.3d 1165, 1170 (11th Cir. 2001); *see also Ndiaye*, 434 F.3d at 1304 (affirming the enhancement where the evidence showed that the defendant recruited and instructed at least two co-conspirators).

Here, the evidence that Rodriguez was an organizer or leader is not overwhelming. Rodriguez's statement or boast that he could call up people to commit a robbery does suggest that he had some planning role in the offenses. However, that statement is not significantly more specific than the statement in *Martinez* that the defendant "orchestrated" drug shipments. *See Martinez*, 584 F.3d at 1028–29. Further, while Rodriguez did not contest that he made the statement, there does not appear to be any evidence that Rodriguez actually planned one of the robberies in that fashion. Also, when considering that statement, it is important to note that the mere suggestion of an offense does not warrant the enhancement. U.S.S.G. § 3B1.1 cmt. n.4.

Other evidence, however, supports the imposition of the enhancement. The unchallenged fact that Rodriguez paid someone to set fire to a car used in one of the robberies is direct evidence that Rodriguez had some planning role in the offenses. Rodriguez also recruited an accomplice to join in on one of the already planned robberies, and did so by more than merely suggesting that a crime could be committed. In conversations with a confidential informant, Rodriguez

19

discussed obtaining rental cars to use during robberies, further suggesting Rodriguez's planning role in the robberies.

While not overwhelming, as detailed above, there is some evidence that Rodriguez was an organizer or leader of the offense, particularly with regard to recruiting accomplices and planning the robberies. *See* U.S.S.G. § 3B1.1 cmt. n.4. Accordingly, we conclude that there was no clear error below in imposing the four-level enhancement.

Robinson cannot be said to have actually presented this issue on appeal. As with the hearsay issue above, Robinson merely stated that he adopted Rodriguez's argument on this issue, and does not present any additional argument. A determination of whether a defendant was an organizer or leader is inherently defendant-specific, and, therefore, we will not consider the issue as to Robinson, who failed to raise any argument, specific to him, that the enhancement was improper. *See Esquenazi*, 752 F.3d at 929 n.11.

**AFFIRMED.**